Brian C. Smith, the husband, appeals from a judgment divorcing him from N. Laquetta Smith, the wife. We affirm in part, reverse in part, and remand with instructions.
The record reveals the following: the husband and wife were married in 1991, and two children were born of the marriage. A daughter was born in 1991, and a son was born in 1996. During the marriage, the wife worked as a registered nurse at Huntsville Hospital every other weekend from the beginning of the marriage until 1999. She later worked part-time for Gradkell Systems, Inc., a closely held computer corporation owned primarily by the wife's brother. The wife voluntarily resigned her position as a nurse in 1999 because of a self-confessed problem with alcohol abuse and narcotics that, among other things, compelled her to inject herself with "waste"[1] portions of narcotics after having administered the prescribed dose to her patients. On April 29, 1999, the wife checked into Bradford Health Services[2] ("Bradford") for a three-week inpatient-treatment program. The wife's mother paid the expenses of the program. During her absence, the children stayed with the husband.
Upon returning home, the wife began attending Alcoholics Anonymous ("AA") meetings and also attended an outpatient-treatment program at Bradford on a regular basis. The husband did not support the wife's recovery attempts; he refused to attend "Al-Anon" support-group meetings, told the wife that AA meetings were only for "losers," and told the wife that he was ashamed for anyone to know that she attended AA meetings. The husband also kept alcohol in the home, drank alcohol around the wife, and offered the wife cocktails on occasion. In addition, the husband regularly searched the wife's possessions and called the numbers on the caller-identification log on the wife's cellular telephone in an effort to track the wife's activities. The wife suffered a relapse in March 1999 and resumed her consumption of alcoholic beverages approximately twice a week, drinking one to two bottles of wine on each occasion.
The wife regained sobriety on March 7, 2000, and currently attends AA meetings two to three times weekly, serving as the speaker at some of the meetings. The wife is presently receiving treatment from Dr. Roger Rinn, a clinical psychologist. As a condition to his continuing to treat her, Dr. Rinn insists that the wife undergo random drug-and-alcohol screenings; he has administered a total of seven screening tests since he began treating her in April 2000, and all of those tests have been negative. Dr. Rinn has observed the wife interacting with both of the minor children and has described that interaction with them as appropriate. In addition, Dr. Rinn believes the wife's status as a recovered alcoholic to have little relevance concerning which parent should act as custodian of the children because, he explained, the chance of relapse falls dramatically after the initial six months of sobriety and also because of the wife's high level of motivation. The wife has arranged, *Page 896 
financed, and provided transportation for all of the children's extracurricular activities, such as tutoring, karate, dance, swimming, and acrobatics. In addition, she has been the primary caretaker for the children during the course of the marriage.
The husband is a scientist at Coleman Research Corporation and earns $101,500 per year. He has been married twice. He has two children, both boys, from his previous marriage; those boys were ages 11 and 14 at the time of trial. The father does not exercise overnight visitation with his oldest child from his previous marriage because that child will not respect his "house rules," and spends little time with the younger child, delegating most of the child-care for that child to the wife. Since the wife began treatment at Bradford, the husband has been very invasive of the wife's privacy, searching her purse, dresser, and car on a regular basis; taping her conversations and public speeches at AA meetings; stealing her private journal that she kept at Bradford as a part of her treatment; and dialing all of the numbers stored in her cell phone, including that of her attorney. The husband has called the police to report various offenses against the wife on five occasions; none of those calls has resulted in any arrests, fines or citations.
The husband sought treatment for himself from a clinical psychologist, Kathryn Allen, for marital stress. Dr. Allen administered a number of tests that are typically used in custody evaluations. She administered the Minnesota Multiphasic Personality Inventory — 2 ("MMPI-2"); the husband's results from the MMPI-2 were within normal limits. Dr. Allen also administered the Bricklin Perceptual Scales test to the minor daughter, and Dr. Allen testified that the results revealed that the daughter felt similarly about both parents.
The husband filed a petition seeking a divorce and full custody of the two minor children on March 28, 2000, claiming that the wife was unfit to serve as a custodial parent because she was subject to a relapse into alcohol abuse. After a trial at which ore tenus testimony was presented, the trial court entered a judgment awarding joint legal custody to the parties, with primary physical custody to the wife. In its judgment, the trial court directed the wife to continue treatment with Dr. Rinn for as long as the doctor deemed necessary and authorized the doctor to report to the court any positive results of random drug and alcohol tests administered to the wife. The trial court directed the husband to pay $1,097 per month in child support for the minor children and to maintain hospitalization, major medical, and dental (if available) insurance coverage for the parties' minor children for so long as the group insurer allows. In addition, the trial court ordered the husband to maintain a policy of life insurance with a minimum value of $150,000, naming the wife as beneficiary on behalf of the children. The trial court made various divisions of personal property in its judgment, awarded the parties their own vehicles, and awarded the wife the marital residence subject to the mortgage indebtedness thereon in the amount of $73,000. The trial court ordered each party to pay the indebtedness in the party's own name with the exception of a Redstone Federal Credit Union signature loan, which was allocated to each party equally. The trial court awarded the wife no periodic alimony.
The husband filed a postjudgment motion. After the trial court held a hearing on the postjudgment motion, it entered an amended judgment, finding that the wife was voluntarily underemployed and reducing the amount of monthly child support from $1,097 to $1,067 per month; the trial court also directed the wife to avoid *Page 897 
consumption of alcoholic beverages when the children were in her care and directed the wife to refinance the marital home within 60 days of the date of the judgment. The husband appealed.
On appeal, the husband claims that the trial court erred to reversal in awarding the wife custody of the two minor children. As to the standard of review applicable to that issue, this court recently quoted our Supreme Court as follows:
 "`[W]here evidence is presented ore tenus, a child custody determination is committed to the sound discretion of the trial court, and [that determination] will not be reversed on appeal absent a finding that the determination is so poorly supported by the evidence as to be plainly and palpably wrong. This standard recognizes the trial court's unique position to observe the parties and to hear their testimony.'"
Moore v. Moore, 795 So.2d 736, 737 (Ala.Civ.App. 2001) (quoting Ex parteWalters, 580 So.2d 1352, 1353 (Ala. 1991) (citations omitted)). The primary consideration in determining custody is the best interests and welfare of the children. Brown v. Brown, 602 So.2d 429 (Ala.Civ.App. 1992). The trial court considers several factors, including the age and needs of the children and each parent's ability to provide for those needs. Id.
After reviewing the evidence in the record, we conclude that the trial court did not abuse its discretion by awarding custody of the children to the wife. The evidence indicates that either parent would have been a suitable custodian of the children and that each parent is quite capable of caring for the children. In addition, the wife has historically provided the day-to-day care for the children, and she is accustomed to responding to their needs. Any concerns the husband may have regarding the wife's potential relapse have been addressed in the trial court's direction that the wife continue treatment with Dr. Rinn and its having authorized Dr. Rinn to report to the court any positive results from random drug and alcohol tests administered to the wife. Therefore, we affirm the custody award.
The husband argues that the trial court erred to reversal in directing him to provide health insurance for the children of the marriage "for as long as such group insurer allows (i.e. if a full-time student, coverage may be available beyond the child's age of majority.)" He maintains that, if his health insurance carrier allows coverage for dependents beyond the age of majority, this provision would be reversible error. We agree. In this case, there is no evidence regarding whether the husband's health-care insurer does or does not allow coverage of adult dependents. The direction in the judgment is expressly conditioned on the husband's health insurer's agreement to provide such coverage. There is no evidence in the record that that condition has been met to trigger what the husband considers as objectionable coverage. Moreover, the wife has not requested postminority coverage and any request at this time would be premature. This court has held that when children are not yet of college age, an award of postminority support is "premature [and] without evidentiary basis and has reversed such an award." Massey v. Massey,706 So.2d 1272, 1273 (Ala.Civ.App. 1997). See also Wylie v. Wylie,794 So.2d 1174 (Ala.Civ.App. 2001); Martin v. Martin, 624 So.2d 192
(Ala.Civ.App. 1993); Berry v. Berry, 579 So.2d 654 (Ala.Civ.App. 1991). Although we reverse the trial court's award of postminority support because it is premature, we note that this court has upheld a judgment ordering the noncustodial parent to pay health-insurance benefits as a part of postminority support, pursuant to *Page 898 Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). See Payne v. Williams,678 So.2d 1118 (Ala.Civ.App. 1996).
The husband also argues that the trial court erred in its division of property and allocation of the marital debt. Although the husband has raised several subissues, we believe these issues are best addressed together.
This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v.Albertson, 678 So.2d 118, 120 (Ala.Civ.App. 1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App. 1993). The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties' property. Grimsley v. Grimsley, 545 So.2d 75,77 (Ala.Civ.App. 1989). In making its division, the trial court may consider several factors, including the parties' respective present and future earning capacities, their ages and their health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App. 1986). The trial court's property division will not be set aside on appeal absent a palpable abuse of that discretion. Id.
The wife was awarded the following property by the trial court: the equity in the marital home worth $26,000; the 1992 Previa Van valued at $8,000; the wife's 401(k) plan from Gradkell Systems valued at $2,000; the wife's 401(k) plan from Huntsville Hospital valued at $7,560; one-half of the husband's 401(k) plan from Nichols Research Corporation that had been accumulated during the marriage valued at $54,056.56; 420 shares of stock in Gradkell Computers, Inc., valued at $2,868.60; the wife's bank accounts[3] in her individual name; and one-half of the contents of the marital home. The trial court awarded the husband the 1995 Jeep Cherokee valued at $10,200;[4] one-half of his 401(k) plan from Nichols Research Corporation that had been accumulated during the marriage valued at $54,056.56; the husband's 401(k) plan from Coleman Research Corporation valued at $5,500; the certificate of deposit at AmSouth Bank valued at $1,000; the husband's individual bank accounts held in his own name; and the remaining half of the contents of the marital home. We note that, at the present time, the husband annually earns approximately $100,000 and the wife makes approximately $20,000. Even in light of the fact that she is currently working part-time, and the court found her to be voluntarily underemployed, the wife's income-earning ability is substantially less than that of the husband. The evidence indicates that the wife's family had provided: prepaid college tuition ("PACT") plans for the children, had purchased the daughter's bedroom furniture, and had paid for several family trips, as well as for the wife's substance-abuse treatment. The husband also claims that the record contains no evidence of retirement benefits earned during the marriage. The record does not support that claim; an exhibit offered by the husband and admitted into evidence shows the husband's retirement benefits accumulated during the marriage.
The parties were married on January 6, 1991. The husband filed the complaint for *Page 899 
divorce on March 23, 2000. The final judgment of divorce was entered almost a year later, on March 13, 2001. The husband claims that the wife was not entitled to retirement benefits because the couple had not been married for 10 years at the time the divorce was filed. The allocation of retirement benefits in divorce proceedings is addressed in §30-2-51, Ala. Code 1975. Section 30-2-51(a) provides in part that "the judge, upon granting a divorce," may direct that marital property from one spouse's estate be given to the other spouse. Subsection(b), which immediately follows this subsection provides:
 "(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
 "(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
 "(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
 "(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court."
(Emphasis added.)
The husband argues that because he and the wife had not been married for 10 years at the time the divorce action was filed, it was error for the trial court to award any of his retirement benefits to the wife. We agree. Although § 30-2-51 is not a model of legislative clarity, we conclude that it requires that the parties must have been married for at least 10 years on the date the action for divorce is filed.
 "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where the plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
 IMED Corp. v. Systems Eng'g Assoc. Corp., 602 So.2d 344, 346
(Ala. 1992) (citing Tuscaloosa County Comm'n v. Deputy Sheriffs'Ass'n of Tuscaloosa County, 589 So.2d 687 (Ala. 1991)).
A reading of § 30-2-51(b) indicates that a trial judge has the discretion to divide a spouse's retirement benefits if either of two conditions exists at the time the complaint for divorce is filed: a spouse must have a vested interest in or be receiving retirement benefits. Section 30-2-51(b) then states that the trial judge's discretion to divide retirement benefits is further limited by three additional conditions: the 10-year marriage rule of subsection (1); the post-nuptial acquisition-of-benefits rule of subsection (2); and the 50-percent-division rule of subsection (3). The apparent meaning of these provisions, when read as a whole, is that the trial judge may divide the value of any retirement benefits in which one spouse has a vested interest or is receiving on the date the action for divorce is filed,provided that the parties have been married for 10 years as of that date, that the judge divides only those retirement benefits acquired during the marriage, and that the *Page 900 
judge awards the noncovered spouse no more than 50 percent of the benefits that may be considered by the court.
Three time-dependent events or conditions are mentioned in the statute, namely: "vesting," "receiving," and the existence of a 10-year marriage. Logically, the trial judge should be required to look to the same date to determine the existence of all three events. We conclude that the legislature intended that the date be when the complaint for divorce was filed. The result argued for by the wife — that the length of the marriage should be measured by the date the judgment divorcing the parties is entered — could cause the division of retirement benefits to be dependent on the following arbitrary and fortuitous circumstances: the congestion of the domestic docket, the complexity of the case, or the number of continuances requested or granted. Thus, the trial court's ruling on continuances or the time of rendering a judgment (including any amended judgments in response to Rule 59 motions) could determine whether retirement benefits were divisible. The performance of an administrative duty by a trial court should not be allowed to affect the merits of a case. In seeking to ascertain legislative intent, a court may consider the consequences resulting from one meaning rather than another and adopt the construction that avoids an illogical, unreasonable, or unfair result. See Studdard v. South CentralBell Tel. Co., 356 So.2d 139, 142 (Ala. 1978). "If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that which is workable and fair." See State v.Calumet Hecla Consol. Copper Co., 259 Ala. 225, 233-34, 66 So.2d 726,731 (1953). We hold that the most workable and fair interpretation of § 30-2-51(b) is that the duration of the parties' marriage should be measured by the date of the filing of the complaint for divorce. The trial court's award to the wife of a portion of the husband's retirement benefits is, therefore, reversed.
The husband received approximately $71,000 of marital assets compared to the wife's receipt of approximately $100,485 of marital assets. Because the entire judgment, including the division of marital assets and the failure to award periodic alimony must be considered together in order to determine whether the trial court abused its discretion, seeHanna v. Hanna, 688 So.2d 887 (Ala.Civ.App. 1997), and because we are reversing the trial court's award to the wife of a portion of the husband's retirement benefits, we must remand this case with instructions that the trial court reconsider the division of the marital assets and the award of periodic alimony. Although § 30-2-51(b)(1) precludes the division of the husband's retirement benefits as marital property, the retirement benefits may be considered as a source of income to the husband from which to pay periodic alimony. See Brasili v. Brasili,827 So.2d 813, 821 n. 9 (Ala.Civ.App. 2002).
The wife's request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Yates, P.J., and Thompson and Pittman JJ., concur.
Murdock, J., concurs in part in the rationale and concurs in the result.
[1] The wife explained that narcotics were supplied in vials containing 50 milligrams ("mg") and 100 mg doses; she stated that, for example, if a patient were prescribed only 75 mg, of a popular narcotic, 25 mg would have to be "wasted." The "wasted" portion of the narcotic was the unused portion in the vial that would have been discarded pursuant to hospital procedure.
[2] A substance-abuse rehabilitation center.
[3] There is no evidence as to the value of the accounts of either party.
[4] This represents the value after the deduction of the $4,800 lien.