The parties were married on November 30, 1990. No children were born of this marriage. This was both party's second marriage. On October 18, 2000, the husband sued for a divorce, requesting an equitable division of the marital property. On November 28, 2000, the wife answered. On December 15, 2000, the wife counterclaimed, alleging adultery and an irretrievable breakdown of the marriage and requesting alimony and attorney's fees and costs. In February 2001, the wife moved for an order granting her exclusive possession of one of the parties' two homes, and spousal support pendente lite. Following an ore tenus hearing, the court entered an order on July 10, 2001, divorcing the parties on the grounds of incompatibility and adultery committed by the husband. The divorce judgment stated, in part:
 "(1) [The husband] is awarded the home of the parties at 200 Asphodel Drive . . . with the obligation to pay the indebtedness thereon and to hold [the wife] harmless therefrom. . .
". . . .
 "(5) [The wife] is awarded the home at 303 Summerrain Terrace in Dothan, Alabama with all of the furniture and furnishings therein not awarded to [the husband] otherwise, [the husband] being responsible to pay off or remove any indebtedness thereon within six months.
 "(6) [The husband] is ordered to pay [the wife] within 60 days fifty-five thousand dollars, ($55,000.00) as further property settlement and on or before the first day of each month commencing July 1, 2001 $5,500.00 as periodic alimony until [the wife's] death, remarriage or cohabitation. [The husband] is responsible for all the marital debts through June, 2001.
 "(7) [The husband] is also ordered to contribute $10,000.00 towards [the wife's] attorney's fees herein."
In August 2001, both parties moved for a new trial, or, in the alternative, to alter, amend, or vacate the judgment. On September 12, 2001, the court entered an order amending the final divorce judgment as to paragraphs five (5) and six (6), as follows:
 "(5) [The wife] is awarded all of the furniture, furnishings, and appliances located in the home at 303 Summerrain Terrace . . . with [the husband] being awarded the home and real estate itself with the obligation to pay the indebtedness thereon.
 "(6) The Court finds that as a matter of law the parties have been married for a period of ten years as perceived and required by Section 30-2-51 of the Code of Alabama and therefore awards [the wife] $220,000.00 of [the husband's] retirement account as further property settlement. [The husband] is ordered to pay to [the wife] . . . each month . . . the sum of $5,500.00 as periodic alimony until [the wife's] death, remarriage, or cohabitation. [The husband] is responsible for all the marital debts through June, 2001."
The wife appealed and moved the trial court to stay its judgment, pending appeal. The husband cross-appealed, and moved the court to stay its judgment and to set a supersedeas bond, pending his cross-appeal. On October 17, 2001, the trial court made the following entry on the case action summary sheet:
 "Pending appeal, the Court's Judgment of divorce . . . is stayed as to the award of the house on 303 Summerrain Terrace . . . and the division of the retirement account of [the husband]. [The wife] may occupy said home until the appeal is resolved with the obligation of *Page 917 
house payments and maintenance. [The husband] is ordered to dispose of neither his retirement account nor the home during such stay. All other provisions shall be effective."
On October 22, 2001, the trial court made the following entry on the case action summary sheet:
 "Upon [the husband's] motion, the stay is granted. [The wife's] use of the home at 303 Summerrain Terrace . . . with the obligation of making the mortgage payments as maintenance thereof shall be considered pendente lite support pending appeal. [The husband] is ordered to pay [the wife] $5,500 payments . . . each month as temporary or pendente lite alimony pending completion of the appeal process. Both parties are ordered not to dispose of any property pending appeal.
 "The Court does not see a need for a supersedeas bond due to these orders, but if either party deems such a bond necessary would entertain recommendations as to the amount to be set."
The wife argues on appeal that the trial court abused its discretion in its division of property, and its award of alimony and retirement benefits, claiming that she had received an insufficient share. A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct.Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). On appeal, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is so unsupported by the evidence as to amount to an abuse of discretion.Id. An equitable division of marital assets is not necessarily an equal division, and the trial court is judge of what is equitable. Parrish,supra. Some factors the trial court should consider in dividing marital property and setting alimony payments include "`(1) the earning ability of the parties; (2) their probable future prospects; (3) their age, sex, health and station in life; (4) the duration of the marriage; and (5) the conduct of the parties with reference to the cause of divorce.'" Echolsv. Echols, 459 So.2d 910, 911-12 (Ala.Civ.App. 1984), quoting Stewart v.Stewart, 341 So.2d 490 (Ala.Civ.App. 1977).
The husband argues in his cross-appeal that the court erred in awarding a substantial portion of his retirement account to the wife, alleging that the parties did not meet the requirements of § 30-2-51, Ala. Code 1975, because they had not been married for 10 years at the time the divorce was filed. The husband further argues that the trial court abused its discretion in its award of periodic alimony to the wife as to the amount and the duration of the alimony payments. We have recently held "that the most workable and fair interpretation of § 30-2-51(b) is that the duration of the parties' marriage should be measured by the date of the filing of the complaint for divorce." Smith v. Smith, 836 So.2d 893,900 (Ala.Civ.App. 2002). In Brasili v. Brasili, 827 So.2d 813
(Ala.Civ.App. 2002), we reversed the judgment of the trial court awarding the wife $30,000 from the husband's deferred-compensation account, holding that "[a]lthough a 401(k) plan falls within the meaning of `retirement benefits' under § 30-2-51(b)(1), the parties in this case were not married for 10 years during which the covered spouse's retirement benefits were being accumulated; therefore, pursuant to §30-2-51(b), the husband's 401(k) account is not subject to division." We noted in Brasili that "although the husband's 401(k) plan is not subject to division under § 30-2-51(b), it may be used by the trial court as a source of income to pay periodic *Page 918 
alimony. See Ex parte Bland, 796 So.2d [340,] 345 [(Ala. 2000)]; Sheltonv. Shelton, 595 So.2d 900 (Ala.Civ.App. 1992) (retirement benefits can be considered as a source of income upon which a periodic alimony award may be based.)" 827 So.2d at 821 n. 9.
At the time of divorce, the parties had been married for just over 10 years. The wife, age 46, testified that she had not been employed during the marriage because the husband insisted that she not work. She stated that she had had previous experience as a dental assistant, dental hygienist, and personal trainer. She testified that her health is generally good, but "questionable" because of a cyst on the pineal gland located in her brain, and a "spot" found on her cervix, for which she has to be reexamined. She testified that she suffers from chronic asthma and severe allergies.
The wife testified that before the marriage she had worked two jobs, earning a combined total of $400 a week. The husband stated that during the marriage the wife had had an "unlimited budget" and was accustomed to spending more than $10,000 per month. He further testified that she would need at least $10,000 per month to maintain her economic status post-divorce. The wife testified that her living expenses after the divorce would be $7,440 per month. She stated that she desired to attend college and that it would take her at least three years to earn a degree. She said that she would be able to work only one job if she attends college.
The husband is 46 years old and has been self-employed as a physician specializing in cardiovascular diseases since 1984. His annual net income over the last 11 years has ranged between $294,000 and $483,000. Before the marriage, he owned a home at 303 Summerrain Terrace in Dothan, which he testified was worth $160,000. Also before the parties' marriage, the husband bought a lot at 200 Asphodel Drive, where the parties built a home, and resided during their marriage. He testified that "[t]he house was being built for us." The husband stated that he estimated the current market value of the home to be between $1,000,000 to $1,500,000, but that he owes about $1,300,000 on the home, because of extensive renovations and repairs.
The husband testified that before the marriage he had accumulated retirement funds in the amount of approximately $250,000, which had increased to $916,380 during the marriage. He stated that during the marriage he had purchased investment property valued at $171,000, and that his medical practice held accounts receivable valued at almost $200,000. According to the husband, he held cash in the amount of $19,753, but he testified that he had recently borrowed $290,000 on his life insurance policy to help pay for work being performed on the Asphodel property. According to the husband, he owns stock in his company worth approximately $600.
The husband testified that he had engaged in numerous extramarital affairs, beginning within a year after the parties married. He described himself as a "self-gratifier" stating that "to cope with stress, I use the immature way of food, sex, whatever — something to allow me to preserve some degree of sanity and continue. And the degree of hurt that I might cause other people was less important to me than coping with whatever was going on." When asked the exact number of women he had been with, he stated, "[i]t's a number that I prefer not to have to delve into my mind." The husband admitted having unprotected sex numerous times in a series of one-night stands and affairs. His series of extramarital affairs culminated in an open relationship with another woman, *Page 919 
which the husband says "without question" broke up the marriage.
The wife testified that four years ago, she learned that her husband was engaged in an extramarital affair, which she did not condone. She further testified that at one point during the marriage, the husband had been charged with sexual harassment at the hospital where he worked, and that he had been "made" to go to counseling. She testified that in February 2000, she "caught" him and another woman in the office late one night together very involved. She stated that she and her husband separated shortly thereafter and have not lived together since.
At the time of the parties' separation, the husband moved from the Asphodel home. The wife resided there, alone, for about 11 months. The wife testified that during that time, the husband was conducting a major renovation project on the home, which eventually forced her to move out because of the "mess." Upon leaving the home, she moved into the Summerrain home with her sister, brother-in-law, and nephew, where she was residing at the time of trial.[1]
After carefully reviewing the record, we find that the husband's multiple marital affairs clearly contributed to the breakdown of the marriage. However, because the parties had not been married for 10 years at the time the husband sued for a divorce, we conclude that the trial court erred in its award of a portion of his retirement benefits to the wife. Nevertheless, we instruct the trial court to revisit its division of property and award of alimony to the wife, taking into consideration the husband's retirement accounts in determining his separate estate and his ability to pay alimony.
The wife's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] The husband allowed the brother-in-law and his family to live in the home in exchange for the brother-in-law's maintaining the property and performing various tasks.