CRAWLEY, Presiding Judge.
This is the third time the parties have been before this court. N. Laquetta Smith (“the wife”) and Brian C. Smith (“the husband”) were divorced on March 13, 2001. The trial court divided the marital assets and liabilities, awarding the wife, among other things, 32% of the value, as of February 1, 2001, of the husband’s 401(k) retirement account at Nichols Research Corporation (“NRC”). The wife was not awarded periodic alimony.
On the first appeal, the husband argued that the wife was not entitled to a share of his retirement benefits because the couple had not been married for 10 years at the time the divorce complaint was filed. This court agreed and reversed the award to the wife of a portion of the husband’s retirement benefits. See Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002) (“Smith I ”). Deciding an issue of first impression, we held that for purposes of the 10-year- *289 marriage requirement of § 30 — 2—51(b)(1), AIa.Code 1975, the duration of a marriage is measured by the date of the filing of the complaint for divorce rather than by the date of the judgment divorcing the parties. At the conclusion of the opinion in Smith I, this court stated:
“Because the entire judgment, including the division of marital assets and the failure to award periodic alimony must be considered together in order to determine whether the trial court abused its discretion, see Hanna v. Hanna, 688 So.2d 887 (Ala.Civ.App.1997), and because we are reversing the trial court’s award to the wife of a portion of the husband’s retirement benefits, we must remand this case with instructions that the trial court reconsider the division of the marital assets and the award of periodic alimony. Although § 30 — 2—51(b)(1) precludes the division of the husband’s retirement benefits as marital property, the retirement benefits may be considered as a source of income to the husband from which to pay periodic alimony. See Brasili v. Brasili, 827 So.2d 813, 821 n. 9 (Ala.Civ.App.2002).”
Smith I, 836 So.2d at 900. During the pendency of the appeal in Smith I,
“the wife withdrew 32% of the husband’s 401(k) account and had it transferred to a separate 401 (k) account in her name. The amount of that withdrawal was $24,346.23. The husband did not move for a stay of execution of the trial court’s judgment or file a supersedeas bond.”
Smith v. Smith, 866 So.2d 588, 590 (Ala. Civ.App.2003) (“Smith II ”).
“On remand after this court’s reversal of the judgment, the trial court, on July 19, 2002, ordered the wife to restore to the husband the $24,346.23 she had withdrawn from his 401 (k) account. The trial court also ordered the husband to pay the wife $400 per month in periodic alimony. The trial court made no other changes in the division of marital assets and liabilities.”
Smith II, 866 So.2d at 590. The husband appealed from the trial court’s judgment on remand; the wife cross-appealed. In Smith II, the husband argued that this court had erred in its remand order by stating that the trial court could consider the husband’s retirement benefits as a source of income from which to pay periodic alimony. The husband maintained that periodic alimony must be payable from current income and, he said, his retirement account was not a source of current income for him. Distinguishing and discussing prior cases, this court agreed with the husband in Smith II:
“We ... reverse the trial court’s judgment awarding the wife periodic alimony and remand the cause for reconsideration by the trial court. If the court determines that the wife needs support from the husband and that the husband is able to pay such support from his current income, then it may award the wife alimony. The court may not, however, consider the husband’s retirement accounts as sources of income from which to pay periodic alimony.”
Smith II, 866 So.2d at 592-93.[1] On remand to the trial court after the decision in Smith II, the wife waived her claim for periodic alimony. The husband insisted, however, that he was entitled to be reimbursed for $3,692.20 in periodic alimony payments he had made from August 2002 — pursuant to the trial court’s order *290 on remand following our decision in Smith I — through May 2003, when Smith II was decided. The trial court denied the husband’s claim for reimbursement.
In Smith II, the husband also contended that the trial court had erred by not requiring the wife to pay 12% interest on the $24,346.23 in retirement benefits that she was ordered to restore to the husband. The wife cross-appealed, arguing that the trial court had erred by denying her post-judgment motion without a hearing on the following issues:
“[The wife] contended] that the' trial court erred by ordering her to restore to the husband the $24,346.23 she withdrew from the husband’s 401(k) account when, she [said], she was entitled to present evidence indicating that, due to a decline in the stock market after the divorce and through no fault of her own, the value of the retirement funds at the time of the court’s order on remand was only $10,953.68. Furthermore, she also alleged the following:
“ ‘5. That all [NRC] employees, former and present, had to roll over or close their 401(k) account[s] (due to [a] merger with [Computer Services Corporation]), and that employees were given six (6) months to make the election to roll over or close the accounts. The [wife] was never provided with such notice and believes that the [husband] was provided with the information but did not pass it along to her.
“ ‘6. As no election was made, the [wife] received a check for $9348.35 and has been informed that $2337.07 has been paid to the Internal Revenue Service for tax and penalty. Said sum is not recoverable from the IRS.
“ ‘7. That the Order should be amended so that [the wife] returns to the [husband] $9348.28, the value of the account on the date it was closed.’ ”
Smith II, 866 So.2d at 590-91. With respect to the wife’s cross-appeal in Smith II, this court held:
“We conclude that the trial court erred in denying the wife a hearing on those issues. The wife was awarded a percentage of the husband’s retirement assets without regard to its value. Upon a reversal of the award, the wife would be required to return the same percentage of the assets to the husband, regardless of its current market value. See generally Green v. Green, 254 So.2d 802 (Fla.Dist.Ct.App.1971). If, as has apparently occurred in this case, the assets have declined in market value between the time of the initial award and the time of the appellate court reversal, then the wife is not liable to the husband for the depreciation because the husband did not move for a stay of execution of the judgment or file a su-persedeas bond. Id.
“The other matters raised by the wife — that the husband failed to notify her of the time limit for her to elect to ‘roll over’ or close the 401(k) account in her name after [NRC] merged with [Computer Services Corporation] and that his failure resulted in her being liable to the Internal Revenue Service for taxes and penalties — are based on disputed questions of fact that must be resolved by the trial court.
“On the appeal, the judgment is reversed and the cause is remanded to the circuit court with instructions for that court to reconsider the division of marital assets and the award of periodic alimony. On the cross-appeal, the trial court is instructed to hold a hearing on the wife’s Rule 59 motion.”
Smith II, 866 So.2d at 593. On remand to the trial court after Smith II, the trial *291 court, on March 22, 2004, held a hearing on the wife’s postjudgment motion. On May 4, 2004, the trial court entered a judgment (1) denying the husband any reimbursement of periodic alimony he had already paid, (2) ordering the wife to restore to the husband $11,685, plus interest from May 23, 2003 (the date of this court’s opinion in Smith II), (3) revising the division of marital property to award the husband a $5,000 equity interest in the marital home upon the occurrence of any one of the following events: the sale of the marital home; the remarriage or cohabitation of the wife with a member of the opposite sex; or the parties’ younger child’s reaching the age of majority or becoming emancipated, and (4) ordering the husband to return to the wife certain items of personal property such as family memorabilia and photograph albums.
Both parties filed timely postjudgment motions — the wife on May 19, 2004, and the husband on May 28, 2004. The husband’s motion was denied on June 1, 2004. The wife’s motion was deemed denied by operation of law on August 17, 2004. See Rule 59.1, Ala. R. Civ. P. The wife filed a timely notice of appeal on September 28, 2004. See Rule 4(a)(1), Ala. RApp. P. The husband filed a timely cross-appeal on October 5, 2004. See Rule 4(a)(2), Ala. R.App. P.

Restitution to the Husband of the Amounts Withdrawn from his Retirement Account

At the March 22, 2004, hearing on remand after our decision in Smith II, the following facts were undisputed: On March 29, 2001, about two weeks after the parties were divorced, Fidelity Aggressive Growth investment fund shares valued at $24,346.23 were transferred from the husband’s 401(k) account at NRC to a separate account for the wife pursuant to a Qualified Domestic Relations Order. The wife understood that she had the option of placing the shares “into any 401(k) plan or investment plan of her choosing.” The employee-benefits manager for NRC provided the wife with a list of available options for placement of the shares. The wife chose to leave the shares in the plan used by NRC employees. On April 19, 2001, the husband elected to receive a lump-sum cash distribution of his shares.
Sometime later, NRC merged with Computer Services Corporation (“CSC”). The wife acknowledged that she had received several pieces of correspondence from CSC, but she did not specifically recall seeing anything other than an account summary. The wife failed to notify CSC as to whether she wished to roll over her account with NRC to CSC or whether she wished to close her account. At the end of 2001, the wife’s account was liquidated or “cashed out” by CSC. The value of the wife’s shares when they were “cashed out” was $11,685. CSC sent the wife a check for $9,348.28; the balance went to the Internal Revenue Service to pay income taxes and early-withdrawal penalties.
The wife asserts that the trial court erred by requiring her to pay the husband $11,685, plus interest, to reimburse the husband for the assets that were transferred to her from his retirement account. She claims that she should have been required to pay only $9,348.28, the net amount that she received after income taxes and penalties were deducted. She points out that, in Smith II, this court held that she should not be held accountable for the depreciation in the value of the account due to economic circumstances over which she had no control.[2] Accordingly, she ar *292 gues, she should not be held accountable for taxes and penalties that, she says, were incurred through no fault of her own.
The wife testified that the husband had handled all of the parties’ financial affairs during the marriage and had never discussed investment accounts with her. The wife had argued in Smith II that the husband “failed to notify her of the time limit for her to elect to ‘roll over’ or close the 401(k) account in her name after [NRC] merged with CSC and that [the husband’s] failure resulted in her being liable to the [IRS] for taxes and penalties.” 866 So.2d at 593. In light of the undisputed evidence adduced at the March 2004 hearing, however, that argument has no merit. The evidence indicated that the husband had cashed out his 401(k) account immediately after the divorce. Thus, the husband would not have received any notice, after the NRC-CSC merger, of the time limit within which an NRC account holder was required to “roll over” his or her 401(k) account to a CSC account. Moreover, duties that may arise by virtue of the marital relationship are terminated by divorce. See 24 Am Jur.2d Divorce and Separation § 409 (2005). After the divorce, the husband neither had a duty nor undertook a duty to offer the wife financial advice.
We hold that the trial court did not err in ordering the wife to restore $11,685 to the husband. Based on the evidence adduced at the March 2004 hearing, it is undisputed that the value of the shares in the wife’s control before the “cash-out” was $11,685. The trial court was authorized to find that the wife failed to respond to requests from CSC that she make an election as to the disposition of her account and, therefore, that the reduced value of her cash distribution was solely attributable to her own negligence.
On his cross-appeal, the husband argues that the wife should have been required to restore to him 1,060.375 shares of the mutual fund, whatever its value. He also argues that interest should have been calculated from May 31, 2002, the date of our reversal in Smith I, and not from May 23, 2003, the date of our decision in Smith II. The husband has changed his position and advanced both arguments for the first time on this appeal. In Smith II, his argument was “that the trial court erred by not ordering the wife to pay 12% interest on the $24,346.23 she was ordered to restore to the husband.” 866 So.2d at 590. Moreover, in his postjudgment motion on May 28, 2004, he moved the trial court to set aside its May 4, 2004, judgment and to enter a judgment of “reimbursement of the 401(k) plan in the amount of $24,346.23 along with statutory interest from April of 2001.”
“[A]n appellate court may not consider an issue that has been raised for the first time on appeal. See, e.g., Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 465 (Ala.2002); Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). A trial court ‘ “should not be placed in error on matters which the record reveals it neither ruled upon nor was presented the opportunity to rule upon.” ’ *293 J.K v. Lee County Dep’t of Human Res., 668 So.2d 813, 817 (Ala.Civ.App.1995)(quoting Wilson v. State Dep’t of Human Res., 527 So.2d 1322, 1324 (Ala.Civ.App.1988)).”
Wilcoxen v. Wilcoxen, 907 So.2d 447, 450 (Ala.Civ.App.2005).

The Award to the Husband of a $5,000 Interest in the Former Marital Home

The wife asserts that the trial court erred by awarding the husband a $5,000 interest in the former marital home because, she says, such an amendment of the property division was not within the mandate of this court in Smith II. We disagree. Our instructions on remand in both Smith I and Smith II contemplated that the trial court would or could amend the division of marital property. In Smith I, we stated:
“Because the entire judgment, including the division of marital assets and the failure to award periodic alimony must be considered together in order to determine whether the trial court abused its discretion,. see Hanna v. Hanna, 688 So.2d 887 (Ala.Civ.App.1997), and because we are reversing the trial court’s award to the wife of a portion of the husband’s retirement benefits, we must remand this case with instructions that the trial court reconsider the division of the marital assets and the award of periodic alimony.”
Smith I, 836 So.2d at 900 (emphasis added). In Smith II, we “remanded [the cause] to the circuit court with instructions for that court to reconsider the division of marital assets and the award of periodic alimony.” 866 So.2d at 593.

The Husband’s Claim for Restitution - of Periodic Alimony He Has Already Paid

The husband maintains that the trial court erred by denying his claim for restitution of the periodic-alimony payments he made between August 2002, pursuant to the trial court’s judgment on remand from this court’s decision in Smith I, and May 2003, when this court decided Smith II. We agree.
In denying the husband’s claim for restitution, the trial court cited § 30-2-55, Ala. Code 1975. That section provides:
“Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex. This provision shall be applicable to any person granted a decree of divorce either prior to April 28, 1978, or thereafter; provided, however, that no payments of alimony already received shall have to be reimbursed.”
(Emphasis added.) Section 30-2-55 applies when a valid judgment awarding alimony is subsequently modified by terminating alimony upon proof of the recipient spouse’s cohabitation. It has no application to a judgment awarding alimony that is subsequently reversed on appeal. See Shirley v. Shirley, 361 So.2d 590, 591 (Ala.Civ.App.1978)(holding that “[t]he reversal of a judgment, or a part thereof, wholly annuls it, or the part of it, as if it never existed”).
Citing Woolwine v. Woolwine, 549 So.2d 512 (Ala.Civ.App.1989), the husband contends that he is entitled to restitution of sums already paid unless restitution is shown' to be inequitable. He maintains that the wife had the burden of showing that restitution would be inequitable and, he says, she made no such showing. *294 Therefore, he claims, the trial court erred by denying his motion for restitution.
In Woolwine, a husband appealed from the denial of his request for reimbursement of postjudgment periodic alimony he had paid while the case was pending on appeal and before the judgment was reversed. This court held that the trial court had erred in denying reimbursement to the husband:
“The husband is, in essence, seeking restitution. This is an equitable remedy by which the husband could be restored to the position he occupied prior to the rendition of the erroneous portion of the divorce decree.
“We recognize that restitution is not, in and of itself, an absolute and invariable right which follows every case where there is a judgment, a satisfaction, and a subsequent reversal. However, we also recognize that restitution is a favored remedy which should be granted unless inequities would result from such an action.”
Woolwine, 549 So.2d at 514. See Restatement of Restitution § 74 (1937) (“[a] person who has conferred a benefit upon another in compliance with a judgment ... is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable_”).
The husband is correct that the wife had the burden of showing that restitution would be inequitable, see Crocker v. Clements’ Adm’r, 23 Ala. 296 (1853), and that she made no such showing at the March 22, 2004, hearing on remand after Smith II. We therefore hold that the trial court erred by failing to order the wife to restore to the husband $3,692.20 in periodic-alimony payments.

The Award to the Husband of Family Photographs and Memorabilia

The husband argues that the trial court erred in ordering him to return to the wife all items of family memorabilia and photographs. He claims that those items should, instead, have been equitably divided between the parties.
The evidence at the March 2004 hearing indicates that at the time of the divorce, the husband took the family photographs, compact discs, and other family memorabilia capable of duplication and agreed to copy them for the wife. He testified that he had duplicated many of the items and given the duplicates to the wife but that he still had possession of some items that he had not yet duplicated. Reading the testimony at the remand hearing as a whole, it is evident that the trial court intended that the parties evenly divide these items. Therefore, we affirm that portion of the trial court’s judgment on remand with the proviso that the items of family memorabilia be divided evenly between the parties.

Conclusion

Those parts of the trial court’s judgment ordering the wife to reimburse the husband $11,685 plus interest from May 23, 2003; awarding the husband a $5,000 interest in the former marital home; and requiring the husband to return family memorabilia and photographs to the wife are affirmed. That part of the judgment denying the husband’s claim for reimbursement of periodic alimony paid from August 2002 through May 2003 is reversed, and a judgment for $3,692.20 is rendered in favor of the husband.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED IN PART.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. In Yohey v. Yohey, 890 So.2d 160, 167 (Ala.Civ.App.2004), this court reaffirmed the statement in Smith II's plurality opinion that periodic alimony must be payable from current income, noting that the 43-year-old husband in Smith II was not currently drawing retirement income.

. In Smith II, we held:
"The wife was awarded a percentage of the *292 husband's retirement assets without regard to its value. Upon a reversal of the award, the wife would be required to return the same percentage of the assets to the husband, regardless of its current market value. See generally Green v. Green, 254 So.2d 802 (Fla.Dist.Ct.App.1971). If, as has apparently occurred in this case, the assets have declined in market value between the time of the initial award and the time of the appellate court reversal, then the wife is not liable to the husband for the depreciation because the husband did not move for a stay of execution of the judgment or file a supersedeas bond.” 866 So.2d at 593.