This is a child-support-modification case.
Willard G. Preussel ("the father") and Beverly R. Preussel ("the mother") were married on October 24, 1980, and divorced on November 9, 1989. Two children, a son and a daughter, were born of the marriage. On August 1, 2001, the mother moved for a rule nisi and a modification of child support. She claimed that the father had not paid his monthly child-support obligation of $1,106.30 pursuant to the divorce judgment. She also requested postminority support for the parties' son several weeks before he reached the age of 19. She requested, among other things, that the court find the father in contempt for his failure to comply with the divorce judgment; that the court award her the amount of the father's child-support arrearage, plus 12% annual interest; and that the father pay postminority support for the son. The father timely answered, claiming that his failure to pay child support was justified because the daughter was over the age of 19 and because the son was emancipated upon his graduation from high school and his subsequent enlistment in the United States Marine Corps Reserves ("the Reserves"). Following ore tenus proceedings, the court, on June 7, 2002, entered the following order:
 "This cause comes to be heard on the [mother's] Petition for Rule Nisi and Modification, and the [father's] answer to the same. The parties have appeared in Court and presented evidence and testimony. Upon consideration of the *Page 1126 
same, the court does hereby ORDER as follows:
 "1. The [father] failed and refused to pay child support as ordered by this court from July 2000, until August, 2001, when the parties' youngest child reached age 19 years. Although the [father] claims that the parties' youngest child was emancipated at age 17 by virtue of his entry into the United States Marine Corps Reserves, the court does not find the child to have been emancipated. The child's entry into the United States Marine Corps Reserves required a five-month training period during which the child was required to live at various military bases. The child was not paid by the United States government until he had completed said training, although the government provided him with housing, food and uniforms during said training. At the completion of the training, the child was 18 years of age, and returned home to live with the [mother]. At the time, the child was not self-supporting, nor could he have sustained himself without financial assistance from his parents.
 "The [father] took no steps to have his child support modified or reduced. The [father] took no steps to have the child legally declared an emancipated minor. Emancipation is governed by statute and can only occur when a minor child has reached age 18. Anderson v. Loper, 689 So.2d 118 (Ala.Civ.App. 1996). Based on the evidence presented at trial, this Court finds that the child was not emancipated prior to his 19th birthday, which occurred on August 23, 2001.
 "Child support payments become final judgments on the day they are due, and payments that mature before a filing of a petition to modify child support are not modifiable. Ex parte State ex rel. Lamon, 702 So.2d 449
(Ala. 1997). The trial court has no power to forgive accrued arrearages in child support payments. Id. It is undisputed that the [father] paid only $414.87 in child support [in] July, 2000. It is undisputed that the [father] failed and refused to pay any chid support thereafter. Accordingly, the [mother] is awarded a judgment in her favor and against the [father] in the amount of $17,232.14. The [father] shall satisfy the judgment by paying the [mother] the monthly sum of $1,100, commencing June 15, 2002, and continuing on the 15th day of each month thereafter until paid in full. An income withholding order is entered to collect said child support arrears. In the event the income withholding order is not implemented prior to June 15, 2002, then the [father] shall pay said sum directly to the [mother] until the income withholding order is commenced.
 "2. The [father] shall pay the sum of $1,890 per semester to [the son] to assist [the son] with his college expenses. The court finds that said sum is equivalent to the room and board charged at the University of Alabama at Huntsville. Said sums shall be paid by the [father] to [the son] at the beginning of each semester or quarter as the case may be, and shall be due and payable by the [father] for a period of four years, or until [the son] obtains a four-year college degree, whichever shall occur first. Said payments shall be further conditioned upon [the son] maintaining a C average. In making this award, the Court has considered the Pell Grants and G.I. Bill benefits currently available to [the son].
". . . .
 "4. The [father] is found to be in contempt for his willful failure to abide by this court's decree of divorce. The [mother] is awarded a judgment in her favor and against the [father] in the *Page 1127 
amount of $2,424.16, for which execution may issue."
On July 3, 2002, the father moved for a new trial or for relief from the judgement. That motion was denied as a matter of law. The father appeals.
The father alleges, among other things, that the trial court erred in requiring him to pay a child-support arrearage. He contends that the son was emancipated during the period for which the court assigned the arrearage award. We disagree.
This court has stated:
 "The age of majority in this state is 19, Ala. Code 1975, § 26-1-1, and a parent has a duty to support a child who is under the age of 19. [State ex rel.] Shellhouse [v. Bentley], 666 So.2d [517], 518 [(Ala.Civ.App. 1995)]. However, once a child is emancipated, a parent no longer has a duty of support. B.A. v. State Department of Human Resources ex rel. R.A., 640 So.2d 961, 962 (Ala.Civ.App. 1994).
 "Emancipation of a minor child is governed by statute and can occur only when a minor child has reached the age of 18. Ala. Code 1975, § 26-13-1. The trial court must base its decision on emancipation on the best interest of the minor child. Id. `The best interest standard affords freedom for the trial court to consider numerous and varied factors. . . . A multitude of factors are proper for consideration when the trial court is determining what is in the best interest of the child, and there are no specific rules or guidelines that will control every case.' Hodge v. Hovey, 679 So.2d 1145, 1148 (Ala.Civ.App. 1996) (citations omitted). The trial court . . . is entrusted to make the ultimate decision on contested issues, and its judgment will not be set aside unless this court finds that the judgment is plainly and palpably wrong. Swann v. Swann, 627 So.2d 429, 430
(Ala.Civ.App. 1993)."
Anderson v. Loper, 689 So.2d 118, 120 (Ala.Civ.App. 1996). However,
 "[w]hen a minor's situation is such that he no longer needs to be supported, then his right to support from his parents, or either of them, should no longer exist. This is because the amount of child support required to be paid by a parent has always been dependent upon two factors; first, the needs of the child and second, the ability of the parent to pay. When a minor is employed and self-supporting, and may properly be expected to continue to do so, his parents are relieved from the obligation of support. `Self-support' has its common and ordinary meaning, that is, the independent support of oneself."
Brooks v. Brooks, 386 So.2d 472, 474 (Ala.Civ.App. 1980) (citations omitted). Additionally, "[a] party may not unilaterally reduce child support payments without the consent of the court. Child support debts are final judgments once due, and the support already owed cannot be waived." Phillippi v. State ex rel. Burke, 589 So.2d 1303, 1304
(Ala.Civ.App. 1991) (citation omitted).
Although the father contended that the son was emancipated, he testified that he knew that the son had returned to live with the mother by January 2001, after the son had finished his stint in boot camp; that he did not know whether the son was self-supporting; and that he had no information on the son's income, work hours, or living expenses.
The record indicates that the son was not self-supporting; the mother paid for his housing, utilities, groceries, car insurance, and cellular-telephone service.
Our supreme court has stated: *Page 1128 
 "It is well settled that child support payments become final judgments on the day they are due and may be collected as any other judgment is collected; and that payments that mature or become due before the filing of a petition to modify are not modifiable. Furthermore, it is well settled that a trial court has no power to forgive an accrued arrearage."
Ex parte State ex rel. Lamon, 702 So.2d 449, 450-51 (Ala. 1997) (citations omitted).
It is undisputed that the father has not paid child support since July 2000, when he paid only $414.87, and that he did not seek to have the child-support award modified. We conclude that the court properly calculated the father's arrearage to be $17,232.14, which consisted of the $619.43 deficit owed for July 2000 and the $1,106.93 owed per month for the period of August 2000 through August 2001, plus interest.
The father next argues that the trial court erred in finding him in contempt for nonpayment of the child-support arrearage. However, he fails to cite any authority to support his arguments. Our supreme court has stated that "'[w]here an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant.'" Spradlin v. Birmingham Airport Auth.,613 So.2d 347, 348 (Ala. 1993). Thus, we affirm the trial court's finding of contempt.
Finally, the father raises the issues whether the trial court's postminority-support award was reasonable, given his financial status, and whether the court placed the appropriate restrictions upon that award.
The court required the father to pay postminority support for the son in the amount of $1,890 per semester. He argues that because of his alleged financial hardship he is unable to pay that amount.
This court has stated:
 "[Ex parte] Bayliss[, 550 So.2d 986 (Ala. 1989),] clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court '"shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999); Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App. 1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989)). The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.' Id.
at 987. The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id."
Penney v. Penney, 785 So.2d 376, 378-79 (Ala.Civ.App. 2000).
The son graduated from high school in May 2000, at age 17. He entered the *Page 1129 
Reserves in July 2000 in order to help pay for college. He returned from boot camp approximately five months later in December 2000, at age 18. The son then received $3,200 as payment for the five months he had spent in boot camp. He enrolled as a full-time student at The University of Alabama in Huntsville ("U.A.H.") for the spring 2001 semester.[1]
The son earned approximately $186 per month from the Reserves. He also worked 30-35 hours per week at a restaurant as a server during the spring 2001 and fall 2001 semesters. Since entering college, the son had received between $200 and $250 from the father to assist with college expenses. The son stated that he was not a "freeloader" and wanted to pay either his mother or a dormitory for room and board.
The mother, who owned a pet-grooming service, testified that her yearly income was approximately $19,000. As previously mentioned, the mother paid for the son's housing, utilities, groceries, car insurance, and cellular-telephone service. She also provided financial assistance to the son while he was in boot camp, because the enlistees are not paid until after they complete basic training. The mother testified that she was not financially able to provide for the son for the duration of his college years, although she had previously provided room and board. The record indicates that the mother's home had burned approximately one month before the hearing. The mother's total losses, which included her automobile, exceeded her insurance coverage.[2] She stated that she had no financial means with which to compensate the losses.
The father, who was a senior scientist at Dynetics, Inc., testified that his yearly salary was $103,000. As of December 2001, the father had over $14,000 in savings and a retirement account containing over $471,000. The father stated that four hospital visits and his overall debt load in the year 2000 contributed to his inability to pay his children's college expenses. However, he presented no evidence of any expenditures related to the hospital visits.
Despite his contention of financial hardship, the record reflects that the father had paid off between $3,000 and $5,000 of his new wife's debt. He was also paying his wife's automobile loan, which totaled $7,692.52. The record also indicates that a $1,026 purchase at Robbins Music Center was deducted from the father's checking account in February 2002. The father also paid the tuition and fees at another in-state college for one of his stepsons for the fall 2000 and spring 2001 semesters. The father also provided his stepson, who was approximately 22 years old and did not work, with room and board and a car that the father leases. The father also admitted that he had purchased a house in New York in which he permitted another stepson to live. The record reflects that the father had also paid for a substantial portion of the daughter's room and board at The University of Alabama ("UA") until the mother petitioned the court for postminority support for the son.[3] *Page 1130 
We note that the parties testified that the father had savings bonds to assist the children with their college expenses. However, the parties were unsure as to the actual value of the bonds, and they submitted no independent evidence of the value of the bonds to the court.
In comparing the father's estate, earning capacity, and income to that of the mother, we cannot say that the court's award of postminority support was unreasonable. We conclude that the trial court did not abuse its discretion in awarding postminority support in the amount of $1,890 per semester for the son.
The father argues that the trial court erred in failing to place sufficient restrictions on its postminority-support award. He alleges that the judgment should be reversed because it failed to require the son to maintain full-time status and because it failed to credit the father for the hours of course work the son had already completed before the award of postminority support.
 "Following Bayliss, this court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C' average, and (3) requiring that the child be enrolled as a full-time student."
Penney, 785 So.2d at 379 (citations omitted).
Here, the court properly limited the award of postminority support to a reasonable period by requiring payment for four years of college or until the son obtained a four-year college degree, whichever came first. The court also properly conditioned the award upon the son maintaining a "C" average, thus meeting the second prong listed in Penney. However, the court's order does not comply with the third prong listed in Penney
because it does not require the son to maintain full-time status. Therefore, that portion of the judgment must be reversed.
The father also argues that his responsibility to pay postminority support was "attenuated by at least one and one-half years." He contends that because the son had already completed three semesters or one and one-half years of course work, his postminority-support obligation should be reduced by as much.
 "In cases that involve an award of post-minority support for a college education, this court has held that the award of such support will be retroactive to the date of the filing of the petition for the support. Thompson v. Thompson, 689 So.2d 885
(Ala.Civ.App. 1997) (citing Bayliss v. Bayliss, 575 So.2d 1117 (Ala.Civ.App. 1990)). In Thompson, this court quoted a Pennsylvania court and concluded that: `There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming court proceedings.' 689 So.2d at 889 (citation omitted)."
Brown v. Brown, 719 So.2d 228, 232 (Ala.Civ.App. 1998).
The record shows that the son entered college in the spring 2001 semester. He then completed both the spring and summer 2001 semesters before the mother filed for postminority support on August 1, 2001. In applying relevant caselaw, the four-year period during which the father is obligated to provide postminority support began as of the date of the filing for postminority support. *Page 1131 
We affirm the trial court's judgment insofar as it awards the mother a child-support arrearage, holds the father in contempt, and awards postminority support for the son. We reverse the trial court's judgment insofar as it fails to place certain restrictions on the award of postminority support, and we remand the case for the trial court to enter a judgment making the award retroactive to the date of the filing and containing the restrictions outlined in Penney, supra, including the requirement that the son maintain full-time status as a student.
The mother's request for an attorney fee on appeal is granted in the amount of $3,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] We note that although the son dropped one class and received no credit for another class during the spring 2001 semester and that he received an incomplete for two classes during the fall 2001 semester, he never dropped below full-time status at U.A.H. He explained that he had received such marks because of his obligations to the Reserves and his employer. He further stated that he had since completed the incomplete course work for the fall 2001 classes and was awaiting his grades for those courses at the time of the hearing.
[2] The mother had insured the home for $64,000; however, her damages exceeded $75,000.
[3] The daughter was approximately 21 years old and had been enrolled at UA since the fall 1999 semester.