THOMAS, Judge.
This is the fourth time these parties have been before this court on appeal from divorce or post divorce proceedings. Goetsch v. Goetsch, 990 So.2d 403 (Ala.Civ.App.2008) (“Goetsch III”); Goetsch v. Goetsch, 949 So.2d 155 (Ala.Civ.App.2006) (“Goetsch 77”); and Goetsch v. Goetsch (No. 2011202, May 30, 2003), 885 So.2d 858 (Ala.Civ.App.2003) (table) (“Goetsch I”).[1] In this appeal, Carl Allen Goetsch (“the father”) appeals the trial court’s imposition of postminority educational support for the benefit of the parties’ oldest son, Chris, on the basis that Chris is the beneficiary of a trust that is available to provide funds to defray the costs of his college education.
The father and Joyce P. Goetsch (“the mother”) have had an acrimonious post divorce relationship. In an earlier opinion issued by this court, we outlined the history of this family and the issues surrounding the custody and visitation provisions relevant to the parties’ three children, Chris, Michael, and Courtney. Goetsch III, 990 So.2d at 406-11. Of the three children, Chris has maintained the most contact with his father, but even he describes their contact as minimal.
Chris began his undergraduate studies at Auburn University in August 2008. In December 2008, the mother filed an action seeking postminority educational support for Chris. The father answered the petition and asserted in his answer that an “abundant trust [had been] established for [Chris’s] education.”
After a trial over three days in June and August 2009, the trial court entered a judgment ordering the father to be responsible for 80% of Chris’s postminority educational expenses. The judgment states, in part, that
*790 “[t]he Court has considered and expressly rejects the assertion of the [father] that he should avoid any responsibility for his son’s college education because of the trust that currently exists in favor of that child. The Court has examined the trust instrument and received testimony of the Trustee, by way of deposition, and determines that the trust explicitly indicates it should not be used to defray obligations of the parents. Further, the Court notes that educational expenses were not the primary purpose of said trust, as established, and that the trust funds would remain available for education after a bachelor’s degree, four years or age 23 and for all the other trust purposes.”
In addition, the judgment contains the typical restrictions on postminority-educational-support awards, including requiring Chris to maintain a “C” average, requiring that Chris be a full-time student, and providing that the father’s obligation expires upon Chris’s completion of an undergraduate degree or Chris’s reaching the age of 23 years. The judgment further states that it “relates back to the date that the parties’ child was accepted to college and each party is credited with any expense paid or advanced by either to date”; however, the judgment does not specify a dollar amount of previously incurred expenses that the father must pay. The father appeals.
Generally, the decision whether to award postminority educational support is within the discretion of the trial court after consideration of the factors set out in Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989). Gabel v. Lores, 608 So.2d 1365, 1366 (Ala.Civ.App.1992). When the evidence regarding those factors is in conflict, the trial court’s factual findings are presumed correct. Abernathy v. Sullivan, 676 So.2d 939, 941 (Ala.Civ.App.1996). However, the trial court’s legal conclusions and its application of the law to the facts are not clothed with such a presumption; review of those matters is de novo. Henderson v. Henderson, 978 So.2d 36, 39 (Ala.Civ.App.2007).
In May 2008, Chris graduated from high school. The father hosted a barbeque for Chris and four friends in either late May or early June 2008. Around that time, Chris and the father discussed generally Chris’s plans for college and the father explained to Chris that a trust set up by the father’s parents, Karl and Anne Goetsch (“the paternal grandparents”), was available to pay for Chris’s educational expenses. The father encouraged Chris to contact one of the trustees of Chris’s trust, Dr. Donald Rowell, the father’s brother-in-law. The other trustee of Chris’s trust is one of the father’s sisters, Elizabeth Ro-well.
Chris did correspond with Dr. Rowell on a few occasions regarding his college plans, which, at one point, included considering attending college in California. Dr. Rowell informed Chris that the trust would be able to fund his undergraduate education and possibly even fund at least part of a postgraduate degree. Chris then informed Dr. Rowell that the father was refusing to pay for Chris’s college education and that the mother was going to take the father to court to seek payment of what Chris termed a “parental obligation” to pay for that education.
Chris also requested that Dr. Rowell advance trust funds to pay for a new automobile that Chris had selected — a 2008 Infiniti G37 — which cost an estimated $43,000. Dr. Rowell denied Chris’s request, stating in his electronic-mail response to Chris that “your grandparents ... would be upset if the initial outlay from the trust intended for your education was used to purchase a $43,000 sports *791 car.” Dr. Rowell did, however, advance trust funds to pay for a laptop computer for Chris. Dr. Rowell also said that he had agreed with Chris that the trust should not pay anything toward his first year’s college expenses until the trial court ruled on the pending petition seeking post-minority educational support.
The father makes several arguments on appeal, including that the trial court erred when it determined that the trust could not be used to fund Chris’s education because the trust was not intended to defray the obligations of the parents and because education was not the trust’s primary purpose and that the trial court erred because, under California law, the father was not obligated to pay postminority educational support for Chris.[2] However, because we find it dispositive, we will first address the father’s argument that the trial court did not properly consider Chris’s trust as a financial resource available to Chris to defray the costs of his own college education. See Ex parte Bayliss, 550 So.2d at 987 (stating that a trial court considering whether to order a parent to pay postminority educational support “shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child” (emphasis omitted; emphasis added)). The mother argues, however, that because Chris has no control over the funds of the trust and must rely on the trustees to disburse the funds as the trustees see fit, the trial court properly determined that the trust was not an available financial resource for Chris.
The trust instrument clearly indicates that the trust fund established for Chris by the paternal grandparents was intended to, among other things, provide funding for educational expenses. The evidence at trial included the deposition testimony of Dr. Rowell and correspondence between Chris and Dr. Rowell regarding the trust and Chris’s educational plans. Dr. Rowell testified that funding Chris’s education was a primary reason that the paternal grandparents established the trust. In addition, Dr. Rowell’s correspondence with Chris indicated that Dr. Rowell, as trustee, was willing to disburse trust funds to defray the costs of “tuition, fees, rent, food, telephone, and books.” Dr. Rowell indicated by electronic mail to Chris that “transportation, health-care allowance and personal expenses” would be the responsibility of Chris’s parents. Dr. Rowell further testified that the paternal grandparents had in mind the purpose of paying for a college education when they established the trust for Chris. Dr. Rowell testified that he had expected that the trust would fund Chris’s college education and that he stood ready to effectuate the educational purpose of the trust by authorizing payment of Chris’s college tuition and related expenses. Thus, although Chris may not have ultimate control over the trust funds, the evidence established that the trust has *792 as one of its main purposes funding Chris’s college education and that one of the trustees had indicated a willingness to comply with any reasonable request from Chris that the trust do so.
As noted above, in determining whether and to what extent to require a parent to pay postminority educational support, a trial court must consider the financial resources of both the parents and the child. The term used by our supreme court in Ex parte Bayliss is “financial resources,” which indicates that a trial court may consider all potential sources of financial support. A trial court is not restricted to considering only a parent’s income when considering whether to award postminority educational support. See Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Instead, a trial court should consider whether the parent “has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.” Thrasher, 574 So.2d at 841. Thus, a trial court considering the financial resources of the child is not limited to only those funds that are earned by the child as income; in fact, trial courts have often considered a child’s grants or scholarship funds when determining whether to award postminority educational support and, if so, what percentage or amount of postminority educational support is appropriate. We agree with the father that the trial court erred in precluding from its consideration Chris’s trust. Therefore, Chris’s trust, which, based on the evidence, is available to pay for Chris’s college tuition and certain related expenses, should have been considered as Chris’s financial resource by the trial court.
In the above-quoted excerpt from the trial court’s judgment, the trial court determined that the trust could not be used to pay for Chris’s college education because the trust specifically stated that it was not intended to be used to defray any obligation the parents had to support Chris. The trust instrument does state that “no payments to the beneficiary shall be made so as to reduce, diminish, or discharge the legal liability of any person (including the trustors and the trustee) for the support of the beneficiary.” However, by determining first that the trust could not be used to defray Chris’s postminority educational expenses because Chris’s parents were obligated to do so, the trial court erred. Until the trial court applied the factors set out by Ex parte Bayliss and its progeny to determine whether the father should be required to pay postminority educational support, the father had no such obligation under the law.
Before it imposed any obligation for postminority educational support, the trial court was required to consider whether the trust was a financial resource available to Chris. Because it failed to consider Chris’s trust to be a financial resource available to Chris, we must reverse the judgment ordering the father to pay 80% of Chris’s postminority educational expenses. Accordingly, we remand this cause to the trial court for it to consider Chris’s trust as a financial resource available to Chris. Because we are reversing on this ground, we pretermit discussion of the father’s other arguments in favor of reversal.[3]
*793 The mother’s request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing.

. Carl Allen Goetsch also appeared twice as a petitioner seeking a writ of mandamus in this court. Ex parte Goetsch (No. 2091013, September 8, 2010),- So.3d -- (Ala.Civ.App.2010) (table); Ex parte Goetsch (No. 2060259, February 6, 2007), 8 So.3d 1047 (Ala.Civ.App.2007) (table).

. We reject the argument that California law would govern the determination of what duty the father might have to support Chris; because the duty to support one’s minor child is determined by the state of the parent’s domicile, the father’s potential duty to pay postminority educational support would also be determined under the law of the father’s domicile — Alabama. See Yarborough v. Yarborough, 290 U.S. 202, 211, 54 S.Ct. 181, 78 L.Ed. 269 (1933) ("The character and extent of the father's obligation, and the status of the minor, are determined ordinarily, not by the place of the minor’s residence, but by the law of the father's domicile.”); Ex parte Bayliss, 550 So.2d at 993 (stating that, ”[i]n expanding the exception to the general rule (that a divorced, noncustodial parent has no duty to support his child after that child reaches majority) to include the college education exception, we are merely refusing to limit the word ‘children’ to minor children”).

. We note, however, that the father argues that the trial court could only make its judgment retroactive to the date of filing of the petition seeking postminority educational support and not to the date Chris began his college education, which predated the filing of the petition; he is correct. See, e.g., Preussel v. Preussel, 874 So.2d 1124 (Ala.Civ.App.2003).