THOMPSON, Presiding Judge.
Brian C. Smith (“the father”) and N. Laquetta Smith (“the mother”) have been before this court on three previous occasions. See Smith v. Smith, 836 So.2d 893 (Ala.Civ.App.2002); Smith v. Smith, 866 So.2d 588 (Ala.Civ.App.2003); and Smith v. Smith, 928 So.2d 287 (Ala.Civ.App.2005).
In May 2009, the mother filed a modification petition in which she sought, in pertinent part, an award of postminority support for the parties’ daughter, who was a minor at the time the petition was filed. The trial court conducted an ore tenus hearing and, on October 12, 2010, entered a judgment in which it, among other things, fashioned a postminority-support award. The father filed a postjudgment motion, and the trial court entered an order modifying the October 12, 2010, judgment as to matters not relevant to the issue on appeal. The father timely appealed.
The parties’ daughter was 19 years old at the time of the September 2010 hearing on the mother’s petition, and she was attending her freshman year at Birmingham-Southern College (“BSC”), a private college. The father testified that the daughter had chosen to attend BSC without consulting him. The father stated that the daughter had good grades in high school, and he did not dispute her aptitude for college. The father’s issue with the college selected by the daughter was that it did not allow the daughter to take full advantage of the “PACT plan” purchased for the daughter by her maternal grandmother before the parties divorced.[1] Under the PACT plan, the daughter’s tuition and fees at any number of public universities in Alabama would be paid by the State. However, although the PACT plan does contribute toward the daughter’s tuition and fees at BSC, it is undisputed that the daughter’s PACT plan does not fully pay for tuition and fees at BSC.
The mother presented evidence indicating that the daughter’s tuition costs, together with applicable fees, were $29,900 for the 2010-2011 academic year. Based on additional evidence presented by the mother, the trial court determined that the annual costs for the daughter’s education at BSC, including tuition, fees, room, board, books, and transportation costs, would total approximately $40,000, or approximately $20,000 per semester.
The record reflects that the daughter had received a partial scholarship and two grants to offset a portion of her tuition costs. In addition, the mother testified that the PACT plan had paid $3,200 toward the daughter’s tuition costs. In total, the daughter received $24,400 in financial assistance for the 2010-2011 academic year, or $12,200 per semester. The mother also presented evidence indicating that she had paid $6,000 to BSC at the beginning of the fall semester and that, at the time of the hearing, a $704.55 balance remained on the daughter’s college account for the fall semester.
The parties presented evidence regarding the average estimated annual costs of a college education for an Alabama resident *431 at various public- colleges in Alabama at which the PACT plan would fully cover all tuition and fees. In reaching its judgment in this matter, the trial court relied upon the information pertaining to the estimates of the annual costs that would have applied if the daughter had attended Auburn University. Neither party has objected to the trial court’s referencing that evidence, which indicates that the total estimated cost of attending Auburn University for the 2010-2011 academic year for an Alabama resident was $23,486; that amount includes $7,900 for the cost of tuition and fees, plus amounts for the costs of books, supplies, room, board, transportation, and personal expenses.
The record on appeal indicates that, at the time of the hearing, the father earned approximately $140,000 annually, which was 72% of the parties’ combined gross income. The father testified that he had a college degree from the University of Alabama, and he stated that he had had a scholarship and part-time employment while he was in college. The father believed that the daughter should also work part time, in part to foster a sense of responsibility in the daughter. The record indicates that the mother also has a college degree, although no specific evidence was presented regarding her education.
The trial court’s October 12, 2010, judgment states, in pertinent part:
“The Court finds that the parties’ daughter ... has the commitment and aptitude for a college education. She has been accepted and is enrolled as a freshman at Birmingham-Southern College. [The daughter’s] expenses to attend Birmingham-Southern, including tuition, mandatory student fees, books, supplies, housing and meals are approximately $40,000. [The daughter] has been awarded various academic scholarships and has a PACT Plan, purchased by her maternal grandmother during her parents’ marriage, which defray the cost of her college education. The scholarships and PACT Plan contribution total $24,000 for [the daughter’s] freshman year.
“The Court finds that the [father], who moved to Florida in the same year [as] the issuance of the [Judgment] of Divorce in this cause, admits that he was aware of [the daughter’s] plans to attend college, although the Court also finds that he had little input into the selection of a college for [the daughter]. He did take a tour of the University of Alabama in Tuscaloosa and investigated the costs of Birmingham-Southern [College] by accessing [its] official website.
[[Image here]]
“5. The parties shall pay on a pro-rata share basis the tuition, room, board, required fees, and book expenses for their [daughter] to attend college, which shall be paid as follows: [The father] shall pay and be responsible for seventy-two (72%) percent of said expenses; [the mother] shall pay twenty-eight (28%) percent of said expenses. Each party shall pay his or her portion of said expenses which are due as of the beginning of each semester or quarter, as the case may be, or as said expenses otherwise become due and payable. If permitted by the institution, said payments shall be made directly to the college pursuant to this Order....
“a. The Court finds from the evidence that the college costs to be used for comparison purposes for [the daughter] shall be the expenses and costs attributed to Auburn University per semester as posted on the official website of Auburn University.
“b. The obligation of the parties to pay toward said college expenses in *432 this paragraph shall terminate on the first to occur of the following events:
“(1) The completion of requirements for a college bachelor’s degree; or
“(2) The child reaches the age of twenty-four (24) years; or
“(3) The child ceasing to become a full-time student (as defined by the school or university attended) and maintaining a ‘C’ or better grade point average in her chosen curriculum.
“c. The obligation of the parties to contribute towards college expenses of their child is limited to and conditioned as follows:
“(1) Expenses shall not exceed those charged by Auburn University located in the State of Alabama;
“(2) Room and board expenses for which the parties shall be obligated are limited to those actually incurred at the child’s college for a ‘median’ priced dormitory room and board combination or those noted on the Auburn University official website, whichever is less;
“(3) The obligation of the parties to pay for required school fees and books shall be limited to those fees and books charged for a specific class or course being taken, for which appropriate verification and documentation shall be provided prior to payment being required;
“(4) The obligation of the parties to pay toward college expenses shall be for those expenses, which are not covered and/or paid' by PACT, or any scholarship or grant, which the child may be awarded. The Court notes, however, that the application of the PACT and scholarships or grants have been and will be applied to the cost of the child’s tuition at Birmingham-Southern College. Any tuition due and owing after application of those awards will be paid by the parties as noted herein but in no event shall exceed the cost of tuition at Auburn University for any given semester or quarter.
[[Image here]]
“6. The Court finds from the evidence presented that the [mother] has paid $6,501 over and above the PACT fund and scholarships to Birmingham-Southern College for expenses of [the daughter’s] first semester, which began on August 28, 2010. The balance due and owing is $704.55. The [father’s] share of the expenses paid and due total $5,187.99, which amount is due to be paid by him by reimbursing the [mother] in the form of a judgment, the sum of FOUR THOUSAND, FOUR HUNDRED EIGHTY-THREE and 44/100 ($4,483.44) DOLLARS in monthly increments of $500, commencing October 15, 2010, and continuing thereafter on the fifteenth day of each month following until this judgment and the interest thereon are paid in full. Additionally, the [father] is ORDERED to make a direct payment to Birmingham-Southern College in the amount of SEVEN HUNDRED FOUR and 55/100 ($704.55) DOLLARS within thirty (30) days of the date of this Order plus any interest that may be due thereon to this institution.”
A trial court may order a parent to provide postminority educational support when, as in this case, a request for such support is made before the child reaches the age of majority. Penney v. Penney, 785 So.2d 376, 378 (Ala.Civ.App.2000).
“The Supreme Court of Alabama set out certain factors for the trial court to *433 consider when ruling on a petition for postminority [educational] support. See Ex parte Bayliss, 550 So.2d 986 (Ala.1989). Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court ‘“shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child’s commitment to, and aptitude for, the requested education.” ’ A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App.1999); Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App.1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989)). The court suggested that trial courts also should consider ‘the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child’s relationship with his parents and responsiveness to parental advice and guidance.’ Id. at 987. The trial court must also determine if the noncustodial parent has ‘sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.’ Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id.”
Penney v. Penney, 785 So.2d at 378-79.
The father does not challenge the imposition of the postminority-support award. Rather, on appeal, the father argues that, because the daughter has a PACT plan, his liability for postminority support should be limited to a portion of the amount the PACT plan would not cover had the daughter elected to attend a public university at which the tuition and fees would be paid by the PACT plan. In other words, the father argues that, because the daughter elected not to attend a public university at which tuition and fees would be covered by the PACT plan, he should be responsible only for a portion of the costs of her nontuition-related academic costs, such as room, board, books, and transportation. In making this argument, the father contends that the trial court erred “as a matter of law” in determining the amount of his postminority-support obligation. In his brief submitted to this court, the father relies on Goetsch v. Goetsch, 66 So.3d 788 (Ala.Civ.App.2011).
In that case, the trial court ordered the father to pay postminority support for his son, who was a beneficiary of a trust fund. The father appealed, arguing that, in determining his postminority-support obligation, the trial court had erred in refusing to consider the funds from the trust fund that were available to pay for the son’s college education. The evidence indicated that the trust fund had been established by the son’s paternal grandparents with the intention that it be used, in part or in whole, for the son’s education. This court reversed the trial court’s judgment, holding that, under the facts of that case, the trial court had erred in finding that it was precluded from considering the trust fund as a source of payment of the son’s college expenses. The court explained:
“As noted above, in determining whether and to what extent to require a parent to pay postminority educational support, a trial court must consider the financial resources of both the parents and the child. The term used by our supreme court in Ex parte Bayliss is ‘financial resources,’ which indicates that a trial court may consider all potential sources of financial support. A trial court is not restricted to considering *434 only a parent’s income when considering whether to award postminority educational support.”
Goetsch v. Goetsch, 66 So.3d at 792. Although Goetsch v. Goetsch, supra, holds that a trial court is not precluded from considering the financial assets of a child, it does not require that the child be restricted to utilizing or fully exhausting his or her own resources before a parent is required to contribute to college expenses.
The father acknowledges that, in this case, the trial court did consider the PACT plan and that the trial court included the amounts paid by the PACT plan as offsetting the costs of the daughter’s college education for which the parents would be responsible. However, the father argues that the trial court could not order him to pay amounts toward the daughter’s tuition and fees that were not covered by the daughter’s scholarships, grants, and the PACT plan. We cannot agree with the father that the daughter’s receipt of funds from the PACT plan precludes the father, as a matter of law, from being responsible for contributing to the cost of tuition or fees for her college education. Rather, the decision whether to grant postminority support, and the amount of any postminority-support award, are dependent upon the facts of each case and are within the discretion of the trial court. Ex parte Bayliss, 550 So.2d 986 (Ala.1989); King v. Barnes, 54 So.3d 900 (Ala.Civ.App.2010); Waddell v. Waddell, 904 So.2d 1275 (Ala. Civ.App.2004); and Stinson v. Stinson, 729 So.2d 864, 868 (Ala.Civ.App.1998).
In Goetsch v. Goetsch, supra, this court held that, in exercising its discretion, a trial court is not restricted to considering only the parents’ financial resources. This court noted that “trial courts have often considered a child’s grants or scholarship funds” in determining whether, and to what extent, to award postminority support. Goetsch v. Goetsch, 66 So.3d at 792.
In this case, the evidence supports a conclusion that the trial court took into consideration the PACT plan available to the daughter, the daughter’s scholarship and grants, and the father’s ability to contribute toward the daughter’s college education. The father did not object to the requirement that he pay a portion of the costs of the daughter’s books, room, board, and transportation. The daughter’s tuition and fees not covered by her scholarship, grants, or the PACT plan totaled approximately $5,500, and, under the post-minority-support award, the father is required to pay a portion of that amount. The father has not disputed the trial court’s finding that he is financially capable of making that contribution. Given the foregoing, we cannot say that the father has demonstrated that the trial court erred in fashioning the amount of the post-minority-support award or in including in that award amounts for the costs of the daughter’s tuition and fees.
The father briefly argues that the trial court erred in requiring that he be responsible for postminority support for “a full five years.” In this case, the trial court considered that the daughter would turn 20 just after she finished her freshman year of college, and it ordered that postminority support continue until the daughter was 24 years old. During the hearing on the merits, the mother’s attorney argued to the trial court that the daughter might not be able to complete her education by the age of 23, which was the age limitation first mentioned by the trial court during negotiations pertaining to the issues to which the parties stipulated. The trial court then stated that it would restrict the daughter to receiving postminority support until the age of 24. The relevant exchange is as follows:
*435 “[THE MOTHER’S ATTORNEY]: Sometimes the fact of the matter is, if you need a certain class to complete your course of study, it may not be. Sometimes kids need an extra semester and they’re still full-time students. In this instance, if you did it to her twenty-third birthday, then she wouldn’t have an inch more than eight semesters.
“THE COURT: I will make it age twenty-four.”
Under applicable caselaw, the trial court is required to place certain restrictions, including temporal restrictions, upon a parent’s postminority-support obligation. Barnes v. State ex rel. Barnes, 653 So.2d 310 (Ala.Civ.App.1994). The father does not rely on caselaw pertaining to the imposition of restrictions on a postmi-nority-support award, nor does he cite any authority in support of his argument that the imposition of the five-year restriction was error. It is not the function of this court to perform an appellant’s legal research or to create arguments on his or her behalf. Gonzalez v. Blue Cross/Blue Shield of Alabama, 760 So.2d 878, 883 (Ala.Civ.App.2000). Issues not properly argued and supported by authority will not be considered on appeal. Groover v. Johnston, 39 So.3d 33, 38-39 (Ala.2009); White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Accordingly, the father has not demonstrated to this court that the trial court erred in placing its temporal restriction on the postminority-support award.
The father also argues on appeal that the trial court erred in calculating the amount he was to repay the mother for the costs of the daughter’s freshman-year fall semester; that obligation was set forth in paragraph six of the trial court’s judgment, quoted above. As already indicated, we have rejected the father’s argument that he is not required to contribute toward the costs of the daughter’s tuition and fees. The trial court based its calculations in paragraph six of its judgment on a finding that the mother had paid $6,501 toward the daughter’s expenses for the semester at issue. The father is correct that the evidence in the record on appeal indicates that the mother contributed $6,000 toward the daughter’s expenses for the fall semester. Accordingly, we reverse that portion of paragraph six of the trial court’s judgment pertaining to the father’s reimbursement of certain expenses to the mother, and we instruct the trial court to recalculate that award.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. This court has explained the PACT program, more formally known as the Wallace-Folsom Prepaid College Tuition Trust Fund, §§ 16-33C-1 to -8, Ala.Code 1975, as follows:
"The trust fund is designed to assist payment of college tuition costs by allowing a person to purchase PACT contracts in ad-vanee of a child’s attending college. The PACT program obligates the state to pay tuition in accordance with the contract if the minor child attends a state college or university. § 16-33C-1.”
Johnson v. Taylor, 770 So.2d 1103, 1104 (Ala.Civ.App.1999).