This case concerns post-divorce proceedings involving the payment of post-minority support for college education.
The parties were divorced in 1978, and the mother was awarded custody of the parties' minor son. The father was ordered to pay child support in the amount of $100 per month. In 1990 the mother filed a petition for modification, requesting that the father be required to contribute to the son's college expenses beyond the son's age of majority.
Following an ore tenus proceeding, the trial court ordered the father to pay $300 per month toward the expenses of the college education of his son. It further ordered that this obligation was to continue from September through May for four calendar years, provided that the son maintain a "C" average and a full academic load in college.
The father appeals from this order and asserts that it was error for the trial court to require him to pay post-minority support toward his son's college education.
In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our supreme court broadened the equity powers of Alabama courts to provide that when a marriage has been terminated by divorce, the duty of parents to support and educate their children may extend beyond the age of majority. The court set out certain factors for consideration by the trial court when determining the appropriateness of post-minority support for college education. It directed that the trial court consider "all relevant factors that shall appear reasonable and necessary, including primarily
the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education." Id. at 987 (emphasis in original). The court suggested that the trial courts also consider "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance." Id.
In Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990), this court supplemented the supreme court's financial criteria by stating that evidence had to be presented to show that the sums required to be paid would not cause the parent "undue hardship." We noted however that " 'undue hardship' does not mean without any personal sacrifice. Most parents who send their children to college sacrifice to do so." Id. at 841.
The record reveals that the father attended college for approximately two years, but did not receive a degree. He is employed as an automotive store manager in Greenville, Alabama, and earns gross monthly wages of $1,516. As part of the benefits provided to him through his employment, he receives all gasoline for his family's vehicles free of charge and is also provided family medical insurance. He has remarried and lives with his wife, his stepdaughter, and two children who are products of the present marriage. His wife works in her grandmother's restaurant but receives no wages; however, in return for this work, the grandmother provides the family with a home to live in free of *Page 866 
charge. The father testified that the family's normal monthly expenses are approximately $1,300. He also testified that he owns certain real property with no equity in it and that he participates in farm and rodeo activities that generate merely enough income to cover their expense.
The mother also attended college for approximately two years, but did not receive a degree. She is employed by the state of Alabama and has a gross monthly income of $1,638. She is remarried but has no additional children. Her husband is employed full time by Butler County, Alabama; the record contains no indication as to what his income is. The mother estimates her family's normal monthly expenses to be $1,100. She testified that due to her personal financial condition, which included having recently filed for bankruptcy, she could not pay all the expenses necessary for the parties' son to complete his college education.
At the time the mother filed her petition, the parties' son was 18 years old and had enrolled at Troy State University. He began classes there in the fall semester of 1990. Prior to attending Troy State, he had taken several junior college courses and had received an "A" in every course. He also had an excellent academic and extracurricular record in high school, where he was president of the student council and an honor graduate with a cumulative grade-point average of 3.56 on a 4.00 scale. The mother testified that she and the son had done extensive work in attempting to choose a college suited to the son and that they had considered numerous schools based on academic advantages, their closeness to home, and the availability of financial aid. The son received several scholarship offers but elected to attend Troy State, where he received a scholarship covering the full cost of his tuition and books. The mother estimates that the expenses necessary for the son to attend college, over and above his financial aid, will be $900 per month. To help cover the cost of his education, the son was working 40 hours per week at a job paying $3.85 per hour. He anticipated having to reduce his work hours to 20 per week during the school year.
The mother testified that she contacted the father once prior to the son's enrollment at Troy State to discuss the son's college options and his need for financial assistance, but was informed by the father that the son would have to pay for college by getting a job. She testified that, after this, she had no further communications with the father concerning the son's education. The father maintains that he attempted to get the son an appointment at a military service academy and had encouraged him to pursue other scholarship offers, but that neither the son nor the mother consulted him about the choice of Troy State or about how college expenses would be handled. He testified that he wants his son to have a college education, but that because of his own financial condition, he does not want to be forced by the court to pay for it. He contends that he barely has sufficient income to meet his ordinary monthly expenses and that he simply cannot afford to pay $300 per month toward the son's college costs.
It is well settled that where evidence is presented ore tenus, as in this instance, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong. Coby v. Coby,489 So.2d 597 (Ala.Civ.App. 1986). Matters concerning child support are within the trial court's discretion, and its judgment will be reversed only if it has abused its discretion or if its determination is plainly and palpably wrong. Brannon v.Brannon, 477 So.2d 445 (Ala.Civ.App. 1985).
As detailed in Bayliss, the primary factors for consideration in determining whether to grant post-minority support for educational purposes must include the financial resources of the parents and child and the child's aptitude for, and commitment to, the requested education. There can be no doubt that the son in the present case has demonstrated an aptitude for success in his educational pursuits, and his efforts in seeking financial aid and his willingness to hold down a job while in school evidence admirable commitment. However, considering all of the evidence, we find that the trial court abused its discretion *Page 867 
in ordering the father to contribute toward the college education of the son. As this court stated inThrasher, 574 So.2d 839, the sums required to be paid for such purposes must not cause the paying parent "undue hardship." The record in this case reveals that the father simply does not have the financial capability to pay his son's college expenses without incurring undue hardship.
The father, who is the sole source of income for a family of five, earns gross wages of $1,516 per month. He estimated his normal monthly household expenses to be approximately $1,300. Certainly this estimate does not seem unduly high, especially when viewed in light of the mother's testimony that her own monthly expenses, in a household considerably smaller than that of the father, are $1,100. Ordinary arithmetic would indicate that after taxes and other deductions, the father has a disposable income barely sufficient to meet his current financial obligations. This is before factoring in an additional $300 per month as ordered by the trial court for the son's college costs, which would increase the father's monthly expenses by approximately 23%.
The facts in the instant case are readily distinguishable from those in Bayliss and other of its progeny where awards of post-minority college expenses have been upheld. See, e.g.,Turner v. Turner, 579 So.2d 1381 (Ala.Civ.App. 1991); Murrahv. Turnipseed, 578 So.2d 1340 (Ala.Civ.App. 1991). The father's income here is substantially lower than that of the non-custodial parents in those cases; his monthly expenses consume a larger portion (indeed, almost all) of his income; and considerable evidence has been presented to indicate that there is no apparent room for an increase in his financial obligations.
We recognize that the "undue hardship" standard described inThrasher does not mean "without any personal sacrifice" and that most parents who send children to college make sacrifices to do so. 574 So.2d at 841. Counsel for the mother has even suggested ways in which the father might modify his manner of living in order to afford making contributions toward the son's college education. However, we find that the father is almost certainly already making considerable sacrifices in order to meet his everyday expenses. Indeed, we find it remarkable that to this point he has been able to support himself and four other persons in addition to making child support payments for his son.
It would be improper in this case to fault the father for "taking on" his current obligation to support his new family following his divorce from the mother. He, in fact, diligently met his obligation to pay child support for his son until he reached the age of majority, and he could not be expected to anticipate a mandatory obligation to pay for the son's post-minority education. While his previous payments of $100 per month might not seem overly burdensome, we would note that the record indicates that the father also voluntarily paid substantial percentages of the son's private secondary school tuition and one-half of the cost of the son's tuition and books for several junior college courses.
We decline to enter into the thicket of speculation created when a court is asked to hypothesize about "the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved."Bayliss, 550 So.2d at 987. We will only say that, based on the record before us, there is some doubt that the father and mother could have and would have funded the son's college education had they remained married. Because we find that payment of the son's post-minority educational expenses would cause the father undue hardship, this court pretermits as unnecessary further discussion of other factors for consideration as defined in Bayliss.
We therefore reverse and remand with instructions to the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 868