BRYAN, Judge.
 

 Susan T. Fielding (“the mother”) appeals from the final judgment of the Eto-wah Circuit Court denying her petition seeking modification of the postminority-educational-support obligation of Johnny M. Fielding (“the father”) regarding the parties’ son, Taber Fielding (“the son”).
 

 The record reveals the following pertinent facts. The mother and the father were divorced in July 1997. The mother filed her first petition seeking postminority support for the son on March 8, 2001, when the son was 18 years old. The trial court ordered the father to pay one-half of the son’s postminority educational expenses, and the father appealed the decision of the trial court to this court.
 
 See Fielding v. Fielding,
 
 843 So.2d 766 (Ala.Civ.App.2002)
 
 (“Fielding I
 
 ”). In
 
 Fielding I,
 
 this court “reversed a judgment entered in case no. DR-96-956.01 ordering the father to pay one-half of the parties son’s postminority educational expenses because there was insufficient evidence of the son’s educational costs to determine whether that award had imposed an undue financial hardship on the father.”
 
 Fielding v. Fielding,
 
 978 So.2d 52, 53 (Ala.Civ.App.2007)
 
 (“Fielding II”).
 
 On remand from our decision in
 
 Fielding I,
 
 the trial court, in an order entered on June 25, 2003, found “that the father could contribute to the payment of the [son’s and the parties’ daughter’s] postminority educational expenses in an amount equal to the amount of certain military disability benefits that the father was then eligible for; award[ed] postminority educational support in an amount equal to these benefits; and reserved] jurisdiction to entertain petitions in the future seeking modification of the father’s postminority-educational-support obligation.”
 
 Id.
 
 at 54.
 

 On July 24, 2003, the mother filed a postjudgment motion to alter, amend, or vacate that order; included in her post-judgment motion was a motion entitled “Plaintiffs Motion for Modification of Child Support” seeking to modify the father’s postminority-educational-support obligation.
 
 Id.
 
 The mother filed the motion for modification because the son was transferring from a local community college to the University of Alabama where he would have increased expenses. The trial court denied the mother’s post-judgment motion, but it failed to rule on her motion to modify.
 
 Id.
 

 On June 28, 2004, the mother again petitioned the trial court seeking to modify the father’s postminority-educational-support obligation.
 
 Id.
 
 The parties sought extensive discovery, and in August 2005, the son graduated from the University of Alabama. On August 11, 2006, the trial court dismissed the mother’s June 28, 2004, petition, believing that it did not have jurisdiction to hear the petition because the son had graduated.
 
 Id.
 

 The mother filed two notices of appeal, one pertaining to the motion to modify she had filed on July 24, 2003, and one pertain
 
 *470
 
 ing to the petition to modify she had filed on June 28, 2004.
 
 Id.
 
 at 54-55. The two appeals were consolidated, and this court held that the appeal from the July 24, 2003, motion to modify was due to be dismissed because it was from a nonfinal judgment.
 
 Id.
 
 at 55. This court then held that “the trial court had expressly reserved jurisdiction to modify its award of postminority educational support in its June 25, 2003, judgment,”
 
 id.,
 
 and we reversed the trial court’s judgment dismissing the mother’s June 28, 2004, petition for modification and remanded the case to the trial court.
 

 On remand from our decision in
 
 Fielding II,
 
 the trial court held an ore tenus hearing on the mother’s petition to modify the father’s postminority-educational-sup-port obligation regarding the son. The son, the father, and the mother testified extensively at the ore tenus hearing.
 

 The son testified that, after he graduated from high school, he attended Gadsden State Community College. In August 2003, however, the son began attending the University of Alabama; he was enrolled as a full-time student there until his graduation in August 2005.
 
 [1]
 
 Based on the father’s military service, the son received benefits under the “G.I. Bill of Rights” (“the G.I. Bill”), which covered all of his tuition and books required for the classes that he enrolled in. The son worked 10-20 hours a week at a printing company while he attended the University of Alabama, and he graduated with a grade-point average of 3.7.
 

 The expenses not covered by the benefits provided under the G.I. Bill, specifically, the son’s rent, utility bills, and everyday living expenses were paid for by the mother; the mother would deposit funds into an account, and the son would use those funds for his expenses. The mother presented itemized receipts and check registers to show the approximate expenses of the son during the 25 months he attended the University of Alabama; those expenses were as follows:
 

 Fall 2003: $ 6,701.97
 

 Spring 2004: $ 5,479.02
 

 Summer 2004: $ 2,403.72
 
 [2]
 

 Fall 2004: $ 4,844.27
 
 [3]
 

 Spring 2005: $ 3,747.53
 

 Total: $23,176.51
 

 The son also testified that he would visit the father while he was enrolled at the University of Alabama, sometimes once a week and other times once a month. The son and the father testified that the father would give the son $20, $50, or $100 in cash whenever the son visited the father.
 

 The father testified as to his income and benefits. In 2001, the father worked at the Etowah County Detention Center (“the detention center”) as a jailer and his annual income was approximately $19,000. In 2003, the father’s annual income from his employment at the detention center was approximately $23,500. The father is a war veteran, and he is currently 70% disabled. In 2003, he began receiving dis
 
 *471
 
 ability benefits from the Veteran’s Administration (‘VA”) in the amount of $15,571 a year. He also began drawing approximately $8,400 a year in retirement benefits from Goodyear Tire. The father also received payments from the mother for his interest in the marital home. The father’s counsel objected to the admission of evidence regarding his disability and retirement benefits and the payments he received from the mother because, he argued, those benefits and payments do not qualify as income. In 2004, the father received the same benefits, and his income from his employment at the detention center remained at $23,500 a year. The father testified that his income and benefits were generally the same for 2005. The father was questioned by the mother’s attorney about benefits the father received through the VA because the son was in college, and it was determined that, after the son graduated, the father’s disability check from the VA decreased by $144 per month.
 

 The mother testified that she kept meticulous records of the son’s expenses because she wanted the father to pay for half of them. She stated that she is not asking the father to pay half of any spending money, gasoline expenses, or the cost of any automobile repairs that were required by the son. She testified that the son had a second account that he used for those expenses and that he deposited his paycheck from the printing company into the second account.
 

 The mother admitted to having substantial assets in addition to her income, but she believed that the father should have to pay some portion of the son’s expenses. The mother submitted a list of her assets and liabilities as part of discovery before the ore tenus hearing. The record reveals that the mother’s total assets, including real estate, savings accounts, retirement accounts, and vehicles, are valued at approximately $434,000; after subtracting her liabilities, her estimated net worth is approximately $259,000. During the years the son was enrolled at the University of Aabama, the mother earned $40,000 a year as a teacher in 2003 and, after she retired, the mother drew approximately $23,000 and $26,000 per year in retirement benefits in 2004 and 2005, respectively.
 

 On May 30, 2008, the trial court denied the mother’s petitions in DR-96-956.01 and DR-96-956.02 without making any specific findings of fact. After her post-judgment motions were denied, the mother timely appealed to this court.
 
 [4]
 

 On appeal, the mother states four issues for this court to consider. Because we reverse the order of the trial court based on a single issue raised by the mother on appeal, we pretermit discussion of the other issues raised by the mother in her brief to this court. The mother argues that the trial court erred in failing to modify its previous orders to require the father to contribute “something” toward the son’s college-education expenses. We agree.
 

 In
 
 Stinson v. Stinson,
 
 729 So.2d 864, 868 (Ma.Civ.App.1998), this Court stated:
 

 “In
 
 Ex parte Bayliss,
 
 550 So.2d 986 (Ala.1989), our supreme court held that the trial court has discretion whether to order postminority support at all, and that, in exercising that discretion, the trial court
 
 shall consider
 

 “ ‘all relevant factors that shall appear reasonable and necessary, including
 
 primarily
 
 the financial resources of the parents and the child and the
 
 *472
 
 child’s commitment to, and aptitude for, the requested education.’
 

 “Ex parte Bayliss,
 
 550 So.2d at 987 (emphasis in original). In addition, the trial [court]
 
 may consider
 

 “
 
 ‘the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child’s relationship with his parents and responsiveness to parental advice and guidance.’
 

 “Id.”
 

 In
 
 Meadows v. Meadows,
 
 3 So.3d 221, 227 (Ala.Civ.App.2008), we stated this court’s standard of review when the trial court has received ore tenus evidence:
 

 “Because the trial court’s factual findings in support of the judgment are presumed to be correct based upon the trial court’s unique ability to both see and hear the witnesses before it and to judge their credibility, we may not reverse the trial court’s judgment in this matter unless the evidence does not support the findings that support that judgment.
 
 Ex parte J.E.,
 
 1 So.3d 1002, 1008 (Ala.2008).”
 

 This court adheres to the general rule that when a trial court makes no specific findings of fact in its final judgment, we “will assume that the trial judge made those findings necessary to support the judgment.”
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992) (citing
 
 Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs., Inc.,
 
 578 So.2d 1061 (Ala.1991)).
 

 In
 
 Thrasher v. Wilburn,
 
 574 So.2d 839, 841 (Ala.Civ.App.1990), we stated:
 

 “A parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship on himself.”
 

 Because a parent has a legal duty to at least aid in providing a college education for their child, if it is demonstrated that the child has the ability and willingness to attain a college education, the father in this case is required to contribute financially to the son’s postminority educational expenses unless doing so would impose on him an undue hardship.
 
 See Thrasher v. Wilburn, supra.
 
 The trial court’s order failing to require the father to make any monetary contribution to the son’s educational expenses required a finding by the trial court that an order compelling the father to contribute to the son’s educational expenses would be an undue hardship on the father.
 

 In
 
 Thrasher v. Wilburn,
 
 this court reversed the trial court’s order regarding postminority educational support and remanded the case so that the trial court could take evidence of the “reasonable necessaries ... for the child to attend college.”
 
 Thrasher v. Wilburn,
 
 574 So.2d at 841. Then, we held that, “[bjaving considered such evidence, it is necessary that the [trial] court determine the financial ability of the father to contribute or provide such amount without undue hardship to himself.”
 
 Id.
 

 The mother in this case introduced extensive evidence of the son’s educational expenses that were not covered by the benefits provided under the G.I. Bill. The father had the burden to show to the trial court that an order requiring him to contribute to the son’s educational expenses would be an undue hardship.
 

 There is extensive testimony and documentation submitted on the record to show the income and assets of the father. How
 
 *473
 
 ever, evidence as to the expenses of the father during the time the son was enrolled at the University of Alabama is not in the record. This court has consistently looked to the monthly income and monthly expenses of a parent in determining whether it would be an undue hardship for that parent to pay postminority educational support.
 
 See A.L. v. B.W.,
 
 735 So.2d 1237, 1239 (Ala.Civ.App.1999);
 
 Lynn v. Lynn,
 
 772 So.2d 1189, 1192 (Ala.Civ.App.2000); and
 
 Jones v. Philpot,
 
 591 So.2d 864, 867 (Ala.Civ.App.1991).
 

 In
 
 Jones v. Philpot, supra,
 
 this court reviewed the monthly income and monthly expenses of the father before noting that “[ordinary arithmetic would indicate that after taxes and other deductions, the father has a disposable income barely sufficient to meet his current financial obligations.” 591 So.2d at 867. We then reversed the decision of the trial court ordering the father to contribute to his child’s postminority expenses because it would cause the father undue hardship.
 

 At trial, the father in this case failed to show that he had expenses that exceeded his income, or that his income was “barely sufficient to meet his current financial obligations”; therefore, the trial court could not have determined that it would be an undue hardship on the father to contribute to the son’s postminority educational expenses. Because the evidence does not support the findings we must assume that the trial court made below, we reverse the judgment of the trial court denying the mother’s petition for a modification of the father’s postminority-support obligation. We remand the case for the trial court to determine, from the evidence already presented by the parties, the father’s ability to contribute to the son’s postminority educational expenses.
 
 [5]
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . The son also testified that he took classes at Jacksonville State University in the summer of 2004. In the summer of 2005, the son participated in an unpaid internship that was required for graduation.
 

 [2]
 

 .
 
 The expenses listed for Summer 2004 include tuition at Jacksonville State University in the amount of $848. The son testified that it was his understanding that he could not use the benefits provided under the G.I. Bill to pay tuition at Jacksonville State University when he was also enrolled at the University of Alabama.
 

 [3]
 

 .The mother testified that Exhibit 5, which contained the son's expenses for Fall 2004, actually contained some expenses for "recreational trips” that were not intended to be included as part of the mother’s claim.
 

 [4]
 

 . The mother filed two notices of appeal; they were consolidated by this court on August 22, 2008.
 

 [5]
 

 . The father’s ability to contribute should be based only on the father's income in the years that the son was enrolled at the University of Alabama. Also, the father’s financial ability to contribute should be considered notwithstanding the son's receipt of benefits under the G.I. Bill; as we noted above, the father has a "legal duty” to at least aid in providing a college education to the son, if, based on the father’s financial ability to pay, it would not impose an undue hardship on him.