THOMAS, Judge.
Gregory D. McCaw (“the father”) and Angela C. Shoemaker (“the mother”) were married on June 1, 1991, and divorced on April 2, 2008. The parties have two children, Meagan and Madison (sometimes collectively referred to as “the children”). The parties entered into a settlement agreement that was incorporated into their divorce judgment wherein they agreed to “shared custody” of the children. The father agreed to pay monthly child-support payments in the amount of $930.66 until the children reached the age of 19, married, or became self-supporting. Section 3.6 of the settlement agreement states that “[t]he issue of the financial contribution of each party for the college education of the children] is specifically hereby reserved for further order of the Court.” The agreement also included instructions regarding changes or proposed changes to the residence of the children. After the divorce, the parents resided four blocks apart.
In October 2010, the mother married a man who resided in Dallas, Georgia. The mother notified the father of her intent to relocate to Dallas, Georgia, after Meagan graduated from high school in 2011. The father filed a petition he styled “Objection to the Relocation and Petition for Rule Nisi” (“the objection to relocation petition”). The father asserted that the mother had failed to comply with certain terms of the divorce judgment regarding relocation and that the mother had attempted to alienate the children from him. He requested that the court hold the mother in contempt. The mother responded to the objection to relocation petition and counterclaimed for, among other things, post-minority educational support for Meagan. The father filed a motion to strike the mother’s response and counterclaim.[1] The mother then filed a motion requesting that the circuit court appoint a guardian ad litem for the children. The circuit court conducted a hearing on March 28, 2011. A transcript of the hearing is not included in the record on appeal; however, the circuit court’s order is included. The circuit court appointed a guardian ad litem for the children and required the mother, the father, and the children to undergo psychological evaluations. On May 10, 2011, the father filed an amendment to the objection to relocation petition. He alleged that a material change had occurred so that the amount of child support he is obligated to pay the mother should be decreased; he claimed that his income had decreased since the time the divorce judgment had been entered and that, because Meagan was entering college, he was obligated to *791 pay child support for only Madison. He requested an evaluation of his child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin. A hearing was set for August 24, 2011.
The mother filed a motion requesting a temporary order that would allow her to relocate to Dallas, Georgia, because her housing lease had expired and because Madison’s school year would begin before the August 24, 2011, hearing. The father opposed the mother’s motion. The circuit court set a hearing on the mother’s motion for June 13, 2011.
Before the June 13, 2011, hearing was held, the parties reached an agreement that they styled as a “Memo Agreement Pendente Lite” (“the memo agreement”). The memo agreement was signed by the parties, their attorneys, and the children’s guardian ad litem. It is stamped “filed in open court.” The circuit court issued a temporary order, making the memo agreement binding on the parties until the August 24, 2011, hearing. In the memo agreement, the parties agreed that the mother would relocate, that the mother would pay the guardian ad litem fees, and that the parties would amend certain other parts of the divorce judgment regarding the custody of Madison resulting from the mother’s relocation. No agreement was reached concerning the father’s child-support obligation. The mother moved to Dallas, Georgia. Thereafter, the parties were obligated to meet, by stipulation in the memo agreement, at the halfway point between their residences to exchange custody of Madison.
After one continuance, a trial was held on August 29, 2011. The trial was presided over by an appointed judge sitting specially for the circuit judge; a judgment was entered on' September 28, 2011. The judgment stated that the parties had reached an agreement (“the partial consent agreement”) as to all issues except “the amount of child support due, whether a deviation from Rule 32 is required, and whether [postminority educational] support for [Meagan] will be allowed.” The circuit court ordered the father to pay monthly child-support payments for Madison in the amount of $712.70.[2] Regarding the children’s insurance coverage, the judgment includes a finding at paragraph five and an order at paragraph c. In paragraph five it found that the parties had stipulated that the mother would carry health insurance for both children and be responsible for 100% of all uncovered medical expenses. Paragraph c. of the judgment elaborates:
“[The mother] shall immediately place both the minor children ... under the insurance coverage, and be responsible for uncovered medical expenses, prescriptions, and co-pays, and she shall be responsible to maintain all insurance coverage available until such time as the children reach the age of 25, finish post-high school education, while maintaining full time student status and a grade point average of C at their chosen institution of higher learning.”
Regarding postminority educational expenses for Meagan, the circuit court’s judgment reads:
“[The father] shall pay the amount of Two Hundred Fifty and 00/100 Dollars ($250.00) directly to Meagan ... each and every month beginning October 1, 2011[,] for her exclusive use in paying for post secondary education, for so long she is a full time student in an accredit *792 ed four year College or University, predicated upon her communication that the money is going for tuition, books, or associated costs, and predicated upon her providing [proof] of her full time status, that she is maintaining a grade point average of C or better, and she is actively participating in classes at all times, except normal summer breaks. The responsibility to communicate her status is upon Meagan, and shall be communicated directly to her father. If she does not communicate, his obligation is suspended until such time as she meets the above requirements. This requirement can be met by automatic deposit, check, or other funds as are reasonable, and can be paid directly to the school if both Meagan ... and [the father] agree.”
The circuit court denied all other requested relief.
On September 14, 2011, before the judgment was entered, the father filed a Rule 59, Ala. R. Civ. P., motion for a new trial. He contended that necessary evidence had not been presented at the August 29, 2011, hearing and that new evidence had “come to light since the trial” about the modification of his child-support obligation regarding Madison and the determination of his postminority-educational-support responsibilities regarding Meagan.[3] On October 24, 2011, the father filed a motion to alter, amend, or vacate the September 28, 2011, judgment; he attached his signed affidavit and certain financial statements.[4] In his postjudgment motion the father contended that the circuit court had erred by not incorporating the terms of the partial consent agreement into its judgment, by not including the language required in the Alabama Parent-Child Relationship Protection Act, codified at Ala.Code 1975, § 30-3-160 et seq., by not deviating downward in the amount of his child-support obligation in light of his alleged “extraordinary costs” of travel to exercise visitation with Madison, by ordering him to pay a monthly payment of $250 in postminority educational support to Meagan in light of his inability to pay the ordered support, by not including an “age ceiling” for Meagan to complete her college education, and by rendering vague and ambiguous orders regarding Meagan’s communications with him and his ability to access her college records.
On October 25, 2011, the mother filed a motion to alter, amend, or vacate the September 28, 2011, judgment. In her post-judgment motion, the mother contended that the circuit court had erred by not incorporating the parties’ partial consent agreement in its entirety, that the circuit court’s judgment contained two different child-support amounts (see supra note 2), and that the circuit court’s judgment did not accurately reflect the parties’ stipulation in the partial consent agreement regarding the children’s health insurance. The mother also refuted the father’s assertion that he did not have the ability to pay *793 a monthly payment of $250 in postminority educational support to Meagan.
The circuit court entered orders stating that arguments on the parties’ post-judgment motions would be heard at a December 5, 2011, hearing. No notation of such a hearing is entered in the State Judicial Information System, and no transcript of that hearing, if it occurred, appears in the record on appeal. However, the circuit court entered two orders on January 10, 2012; those orders resolved all outstanding issues.
In those orders, the circuit court, among other things, incorporated the partial consent agreement in its entirety, confirmed that the amount of the father’s child-support obligation was $712.70, and denied the father’s request to eliminate the award of a monthly payment of $250 in postminority educational support to Meagan. Additionally, the circuit court modified its judgment to clarify the method by which Meagan must communicate certain information related to her schooling to the father. The father timely appealed to this court on February 16, 2012.
The father, proceeding pro se on appeal, seeks this court’s review of the circuit court’s judgment, contending that the circuit court’s judgment should be reversed (1) because the award of postminority educational support is error, (2) because it did not award a downward deviation in the father’s child-support obligation due to his “extraordinary” travel expenses, and (3) because the mother failed to pay a filing fee for her counterpetition for postminority educational support.
We examine the father’s third argument first. The father contends that the judgment regarding the mother’s post-minority-educational-support claim is void because, he says, she failed to pay a filing fee for her counterpetition. Nothing in the record supports the father’s bare assertion that the mother failed to pay a filing fee.
“ ‘An appellate court does not presume error; the appellant has the affirmative duty of showing error. Perkins v. Perkins, 465 So.2d 414 (Ala.Civ.App.1984). Appellate review is limited to the record and cannot be altered by statements in briefs. Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793 (Ala.1984). Error asserted on appeal must be affirmatively demonstrated by the record. If the record does not disclose the facts upon which the asserted error is based, the error may not be considered on appeal. Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ.App.1981).’
“Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ.App.1993).”
Dudley v. Dudley, 85 So.3d 1043, 1048 (Ala.Civ.App.2011).
Next, we examine the father’s argument regarding postminority educational support.
“Because ‘the general principles concerning child support [are] equally applicable to a[n] [Ex parte ] Bayliss [, 550 So.2d 986 (Ala.1989),] motion for postmi-nority college support,’ this court considers only whether the trial court abused its discretion in determining whether to award support and, if it awarded support, whether it abused its discretion in determining what amount of support is appropriate under the circumstances of the case. Berry v. Berry, 579 So.2d 654, 656 (Ala.Civ.App.1991); see also Wells v. Wells, 648 So.2d 617, 619 (Ala.Civ.App.1994) (quoting Berry, 579 So.2d at 656). As with all judgments based on the trial court’s receipt of oral testimony, the factual findings of the trial court in a judgment awarding or denying postminority *794 educational support are presumed correct; moreover, in the absence of express findings by the trial court, any findings that are necessary to the judgment are presumed to have been made, provided that the record evidence would support such findings. Fielding v. Fielding, 24 So.3d 468, 472 (Ala.Civ.App.2009).”
Allen v. Hill, 76 So.3d 820, 822 (Ala.Civ.App.2011).
“A trial court may order a parent to provide postminority educational support when, as in this case, a request for such support is made before the child reaches the age of majority. Penney v. Penney, 785 So.2d 376, 378 (Ala.Civ.App.2000).
“ ‘The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority [educational] support. See Ex parte Bayliss, 550 So.2d 986 (Ala.1989). Bayliss clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of post-minority educational support for a child of divorced parents, the trial court “ ‘shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child’s commitment to, and aptitude for, the requested education.’” A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App.1999); Thompson v. Thompson, 689 So.2d 885, 887 (Ala.Civ.App.1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989)). The court suggested that trial courts also should consider “the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child’s relationship with his parents and responsiveness to parental advice and guidance.” Id. at 987. The trial court must also determine if the noncustodial parent has “sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.” Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id.’
“Penney v. Penney, 785 So.2d at 378-79.”
Smith v. Smith, 85 So.3d 428, 432-33 (Ala.Civ.App.2011).
In his brief, the father contends that, in determining the amount of postmi-nority educational support, the circuit court miscalculated his budget, improperly used percentage guidelines from the child-support guidelines rather than the factors set out in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), improperly determined that he has sufficient resources to pay a monthly payment of $250 to Meagan, failed to consider the standard of living that Meagan would have enjoyed if the marriage had not been dissolved, failed to recognize that Meagan lacked a relationship with the father, failed to recognize that the mother failed to communicate with the father regarding Meagan’s education, and failed to specify an end date for the father’s postmi-nority-educational-support obligation.
The father cites Jones v. Philpot, 591 So.2d 864 (Ala.Civ.App.1991), for the proposition that a postminority-educational-support award cannot exceed the parent’s ability to pay. In Jones, this court determined that the postminority-educational-support obligation ordered by the trial court had created undue hardship on the *795 obligor parent. 591 So.2d at 867. We “recognize[d] that the ‘undue hardship’ standard described in Thrasher [v. Wilburn, 574 So.2d 889, 841 (Ala.Civ.App.1990),] does not mean ‘without any personal sacrifice’ and that most parents who send children to college make sacrifices to do so.” Id. We concluded that the trial court in Jones had exceeded its discretion because the obligor parent’s income was substantially lower than the other parent’s income, his monthly expenses consumed “almost all [ ] of his income,” and evidence was “presented to indicate that there is no apparent room for an increase in his financial obligations.” Id. The obligor parent earned a gross monthly income of $1,516 for a family of five. Id. at 865.
In this case, the father testified that he is unmarried and has a monthly gross income of $5,417. The circuit court’s judgment requires him to pay monthly child support for Madison in the amount of $712.70 and monthly postminority educational support to Meagan in the amount of $250 for a total amount of $962.70. The father’s reliance on Jones is misplaced. We determine that, although the father may experience some personal sacrifice to send Meagan to college, he is not unduly burdened when his remaining gross monthly income equals $4,154.30. Unlike the obligor parent in Jones, the father’s income is greater than the mother’s income, and, although he contends that his monthly expenses consume all of his income, some evidence was presented to the circuit court indicating that there is room for a slight increase in his financial obligation to support his children.
The father next points out our reasoning in Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990). He asserts that the circuit court relied on the percentage he is required to contribute in child-support payments according to the child-support guidelines to determine the amount of postminority educational support he is required to pay. He noted that in Thrasher we stated “that the child support guidelines for a minor child are not applicable to the determination of an amount for providing or contributing to college expenses after the child reaches majority.” Id. at 841-42. However, in Entrekin v. Entrekin, 627 So.2d 955, 957 (Ala.Civ.App.1993), we clarified that statement:
“A post-minority support obligation should be based upon the reasonable necessaries of the child’s college expenses. Thrasher, supra. The fact that the amount of post-minority support ordered happens to be the same amount as provided by the guidelines does not automatically denote error by the trial court. Brown v. Short, 588 So.2d 468 (Ala.Civ.App.1991).”
Therefore, we reject the father’s assertion that the circuit court erred to reversal by ordering him to pay postminority educational support in the amount of $250 per month, thus making his total support obligations for both children substantially equivalent to what the child-support guidelines indicate he would owe as child-support for both children. The father further cites Ex parte Bayliss, supra, asserting that his “position that he cannot afford college tuition” should have been the circuit court’s primary consideration. See Bayliss, 550 So.2d at 987. Other than the citation to Bayliss and his bare conclusion, the father offers no supporting argument that indicates that the circuit court failed to consider his financial resources as a primary factor in determining his postmi-nority-support obligation.
“It is well settled that ‘[t]his court will address only those issues properly presented and for which supporting authority has been cited.’ Asam v. Devereaux, *796 686 So.2d 1222, 1224 (Ala.Civ.App.1996). ‘Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.’ White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); see also Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (noting that an appellant should ‘present his issues “with clarity and without ambiguity”’ and ‘fully express his position on the enumerated issues’ in the argument section of his brief (quoting Thoman Engineers, Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Ala.Civ.App.1976))). Accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (‘It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work ... and put flesh on its bones.’).”
Ex parte Liberty Mut. Ins. Co., 92 So.3d 90, 105 (Ala.Civ.App.2012).
The father cites Bayliss, 550 So.2d 986, for our supreme court’s conclusion that the “trial court may consider, also, the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved.... ” Id. at 987. The father contends that the circuit court erred because it failed to weigh all the evidence of the parents’ current standards of living. The circuit court heard testimony that the mother and the father had lost their jobs and had taken new positions at lower incomes than they had enjoyed at the time of the divorce; that the father had reduced his expenses; and that the father had neither a savings account, equity in his home, nor a retirement account. First, we note that Bayliss permits, but does not require, a trial court to consider the standard of living that the child would have enjoyed had the marriage remained intact. Id. Furthermore, the circuit court clearly weighed the evidence of the mother’s and of the father’s employment histories because it included a summation of the evidence in its factual findings. We presume that the circuit court’s factual findings are correct; moreover, we hold that the evidence presented supported the circuit court’s findings. See Allen, 76 So.3d at 822.
Next, the father presents a two-paragraph argument citing Bayliss, supra, and Stinson v. Stinson, 729 So.2d 864 (Ala.Civ.App.1998), for his contention that he and Meagan are estranged. The father testified that, as of March 2011, Meagan had cut off her relationship with him and that she did not communicate with him or listen to his advice. He said: “At this point, she has basically — we don’t have a relationship right now.” The father’s brief does not present a legal argument that his relationship to Meagan is like the father’s relationship with the child in Stinson, but, regardless, in Stinson, we held that “the existence of a strained relationship will not generally suffice to deny Bayliss support altogether, it is a factor for the court to consider and it may, therefore, be the basis for reducing what might, under other circumstances, be a greater amount of support.” Id. at 869. An award of postminority educational support is a matter that rests in the sound discretion of the trial court, and we will not disturb its judgment as to that issue absent a showing that it exceeded its discretion. See id. In this case, there is no evidence tending to prove that the circuit court exceeded its discretion as to this issue.
Next, the father contends that the circuit court’s judgment should be reversed because, he says, the mother failed to communicate with him regarding Meagan’s *797 college education as required in the divorce judgment. In violation of Rule 28(a)(10), Ala. R.App. P., the father fails to cite any authority to support a conclusion that the circuit court erred on this basis. Therefore, we will not consider the merits of his argument.
The father cites Penney v. Penney, 785 So.2d 376 (Ala.Civ.App.2000), for his final argument regarding postminority educational support — that the circuit court failed to specify an end date for his obligation to pay a monthly amount of $250 to Meagan. In Penney we recited three reasonable limitations regarding postminority-educational-support awards.
“Following Bayliss, this court has held that the trial court must set reasonable limitations on the parent’s responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. See Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App.1999); Hocutt v. Hocutt, 591 So.2d 881, 882 (Ala.Civ.App.1991); Kent v. Kent, 587 So.2d 409, 412 (Ala.Civ.App.1991). These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a ‘C’ average, and (3) requiring that the child be enrolled as a full-time student. Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App.1999); Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App.1999)(quoting Bahri v. Bahri, 678 So.2d 1179, 1181 (Ala.Civ.App.1996)).”
785 So.2d at 379. We reversed the judgment and remanded the cause in Penney because, among other things, the trial court had failed to impose a reasonable time limitation on the postminority-edu-cational-support award. Id. at 382. Accordingly, we agree with the father that, in this case, the circuit court’s judgment is due to be reversed, insofar as it failed to impose a reasonable time at which the father’s obligation to pay Meagan an monthly amount of $250 will end.
We turn now to the father’s argument that the circuit court should have awarded a downward deviation in the father’s child-support obligation due to his alleged “extraordinary” travel expenses. The father’s only authority for his argument is a general citation to Rule 32(A)(1)(b) Ala. R. Jud. Admin. Rule 32(A)(1)(b) allows for a deviation from the child-support guidelines for “[extraordinary costs of transportation for purposes of visitation borne substantially by one parent.” (Emphasis added.) However, the facts indicate that, in this case, the costs of transportation are equally shared by the mother and the father. Both parents are required to travel approximately 70 miles to meet at their agreed upon exchange point. Thus, we conclude that the father has failed to demonstrate that he alone is required to “substantially [bear]” the cost of visitation-related transportation such that a downward deviation in his child-support obligation is warranted. Id. Furthermore, “[t]he existence of one or more of the reasons enumerated in [Rule 32(A)(1) ] does not require the court to deviate from the guidelines, but the reason or reasons may be considered in deciding whether to deviate from the guidelines.” Rule 32(A)(1). Child-support determinations are committed to the sound discretion of the trial court, and its decisions on the matter will not be disturbed by this court absent an abuse of discretion. We determine that the circuit court’s unwillingness to allow a downward deviation in the father’s child-support obligation due to his 70-mile trip from Vestavia to the halfway point in Oxford to meet the mother and exchange custody of Madison is not an abuse of discretion.
*798 The father’s final argument is that judgment regarding the mother’s postmi-nority-educational-support claim is void because she withdrew her counterclaim (see supra note 1) and, thus, the father says, the circuit court erred by allowing “two and a half hours of testimony” on postmi-nority educational support. However, the father failed to object to the testimony. In fact, the circuit court clarified the issues at the beginning the trial by asking the father’s attorney to list the issues that remained after the stipulation to the parties’ partial consent agreement. The father’s attorney stated:
“Based on the agreement that we have entered into, the pending issues are a recalculation of child support pursuant to the guidelines, a determination regarding who shall be allowed to carry health insurance for the minor children, and postminority support. Included in the issue of child support, Your Honor, is the [fatherj’s request for a downward deviation, and we will establish his cause for that.”
(Emphasis added.) According to our rules of civil procedure, when an issue not raised in the pleadings is tried by the express or implied consent of the parties, the issue must be treated as if raised in the pleadings. See Rule 15(b), Ala. R. Civ. P. In this case, the father did not object to the testimony concerning the issue of postmi-nority educational support; therefore, the issue was tried by the express consent of the parties and the judgment is not void.
In conclusion, we reverse the judgment of the circuit court insofar as it failed to impose a reasonable time limitation for the father’s postminority-educational-support obligation, and we remand the cause. Upon remand the circuit court must impose a reasonable time limitation on its postminority-educational-support award. The judgment is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. The parties filed a partial consent agreement in the circuit court on August 30, 2011, see discussion infra, in which the father voluntarily withdrew the objection to relocation petition. The parties agreed to "strike” the mother's response and counterclaim from the record.

. In an apparent typographical error, the judgment awards $712.30 in child support in another provision. As explained infra, the circuit court corrected the amount of the father’s child-support obligation in response to the mother’s postjudgment motion.

. "To suffice as newly discovered evidence, the evidence must have been in existence on the date of the trial.” Reeners v. Reeners, 611 So.2d 1109, 1111 (Ala.Civ.App.1992) (citing Pacifico v. Jackson, 562 So.2d 174, 177 (Ala.1990)). Regardless, the father’s motion for a new trial was filed on September 14, 2011; that motion quickened on September 28, 2011, the date the judgment was entered. The circuit court did not enter an order granting or denying the father's motion within the 90-day period set forth in Rule 59.1, Ala. R. Civ. P., and the motion was, therefore, deemed denied by operation of law on December 27, 2011. See Miller v. Miller, 10 So.3d 570, 573 (Ala.Civ.App.2008).

. The father amended his motion on November 25, 2011, and the mother objected to that amendment on December 1, 2011.